**UNITED STATES of America**

v.

**Arthur William HECKMAN, Appellant.**

No. 08–3844.

United States Court of Appeals, Third Circuit.

Argued Sept. 30, 2009.

Opinion filed: Jan. 11, 2010.

**402**

Sarah S. Gannett, Assistant Federal Defender, Christy Unger, Esquire (Argued), David L. McColgin, Assistant Federal Defender, Leigh M. Skipper, Chief Federal Defender, Defender Association of Philadelphia, Federal Court Division, Philadelphia, PA, for Appellant.

Michael L. Levy, United States Attorney, Robert A. Zauzmer (Argued), Assistant United States Attorney, Sherri A. Stephan, Assistant United States Attorney, Office of the United States Attorney, Philadelphia, PA, for Appellee.

Before: RENDELL, AMBRO and WEIS, Circuit Judges.

## OPINION OF THE COURT

AMBRO, Circuit Judge.

Arthur William Heckman was indicted and pled guilty to one count of transporting child pornography, in violation of 18 U.S.C. § 2252(a)(1).[1] He was sentenced to 180 months' imprisonment, followed by a lifetime term of supervised release. On appeal, Heckman challenges three "Special Conditions of Supervision" imposed by the District Court for the remainder of Heckman's life: 1) an unconditional ban on Internet access; 2) a requirement that he participate in a mental health program; and 3) a restriction on any interaction with minors.

While we affirm the mental health condition, we vacate the other challenged conditions and remand for resentencing consistent with this opinion.

## I. Facts

Heckman emailed 18 pictures of minors engaging in sexually explicit conduct to a stranger in an Internet chat room. Though Heckman believed the recipient to be a person who shared his interest in child pornography, he was actually transmitting the images to an undercover special agent with the Federal Bureau of Investigation ("FBI").

In October 2003, the special agent entered an Internet chat room, which contained several Internet users interested in child pornography and sexual encounters with minors. In doing so, the agent posed as another user, posting the following message: "[R]oom topics vids to trade." Under the screen name "n3zzu2," Heckman responded, "[W]ish I did." Heckman and the special agent then discussed the possibility of trading images of children engaged in sexual activity. Shortly after this exchange, the special agent received an email from Heckman, with seven images of children attached, each sexually explicit.

---

1. This provision applies to:
    (a) Any person who—
    (1) knowingly transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate commerce or foreign commerce by any means including by computer or mails, any visual depiction, if—

    (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
    (B) such visual depiction is of such conduct. . . .
    18 U.S.C. § 2252(a)(1).

The special agent responded to Heckman with a corrupted file, entitled "boy-luv.wmv." Heckman replied with 11 additional images. Shortly thereafter, Heckman sent an email to the special agent complaining that the agent's file was corrupted.

In response to a request by the FBI, America Online disclosed that the screen name "n3zzu2" belonged to "Arthur Heckman," whereupon he was arrested. Heckman waived his *Miranda* rights and admitted to receiving and then transmitting 18 images of child pornography.[2]

## II. Procedural History

A grand jury returned a one-count indictment charging Heckman with transporting child pornography. He pled guilty in April 2008. At sentencing, both parties agreed that Heckman's Sentencing Guidelines range was between 70 and 87 months. Because he had prior convictions involving the sexual abuse of minors, however, a statutory minimum of 180 months applied. *See* 18 U.S.C. § 2252(b)(1). The Government agreed to the mandatory minimum sentence, but only if it ran consecutively to another 180-month sentence that Heckman was already serving in Florida. The Government argued that, regardless of the sentence imposed, lifetime supervised release was necessary to protect the public from Heckman. Given his age (48 at the time of his guilty plea), Heckman requested that his sentence be concurrent with the Florida sentence.

The District Court agreed with the Government. It sentenced Heckman to the mandatory minimum sentence of 180 months' imprisonment, to run consecutively to the 180-month term imposed on him in September 2006 by the Florida state court. The Court also sentenced Heckman to lifetime supervised release and a nominal fine of $100. The following special conditions of lifetime supervised release are at issue in Heckman's appeal:

> The defendant is prohibited from access to any Internet service provider, bulletin board system, or any other public or private computer network.
>
> . . .
>
> The defendant shall participate in a mental health program for evaluation and/or treatment as directed by the United States Probation Office. The defendant shall remain in treatment until satisfactorily discharged and with the approval of the United States Probation Office, including sex offender treatment. The defendant shall follow the directions of the United States Probation Office regarding any contact with children of either sex, under the age of 18. The defendant shall not obtain employment or perform volunteer work which includes, as part of its job/work description, contact with minor children.

App. 6.

In explaining its reasons for Heckman's sentence, the Court reviewed each of the relevant sentencing factors under 18 U.S.C. § 3553(a).[3] The Court began by

---

**2.** The FBI later confirmed that the individuals in the images were actual children.

**3.** These factors are: 1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; 2) the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment," "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; 3) "the kinds of sentences available"; 4) "the kinds of sentence and the sentencing range established for [the offense]"; 5) "any pertinent policy statement [by the Sentencing Commission]"; 6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and 7) "the need to provide restitu-

noting that a 180–month, consecutive sentence was necessary, given Heckman's extensive criminal history, a history "almost unbroken from the time he was nineteen years old until today at age forty-eight." App. 49–50. It noted that this was Heckman's "eighth contact with the criminal justice system," with "a strong thread . . . of sexual offenses to minors and child pornography consistent throughout this criminal record." *Id.* at 47, 50.

The Court also considered the gravity of the harm that resulted from the dissemination of child pornography itself. It observed, "[T]he children depicted in these images are violated every time . . . an individual looks at their photographs and every time someone shares those photographs documenting their abuse." *Id.* at 50. Furthermore, "once published on the Internet, they cannot be taken back." *Id.*

From there, the Court turned to deterrence, noting that "[n]othing has deterred this defendant from his lifetime path of exploiting children." *Id.* Indeed, "[i]t appears that [Heckman] took every opportunity he could find to sexually abuse children. He was not deterred by his arrests. He was not deterred by his convictions. He was not deterred by his sentencing on parole violations, and he was not deterred by any treatment he may have received." *Id.* at 52. Given these reasons, it rejected Heckman's request for a concurrent sentence.

Finally, the Court turned to its reasons for sentencing Heckman to lifetime supervised release. It did not address its rationale for each of the special conditions, individually. Instead, it considered the need for lifetime supervised release generally, especially in light of Heckman's decades-long record of child exploitation. The Court explained, "[G]iven [Heckman's] proclivity for committing sexual offenses

involving minors and child pornography and his apparent inability to control himself, I think it's essential from the point of view of deterrence . . . [,] and . . . protecting the public, that this defendant be supervised for the rest of his natural life." *Id.* at 56–57. Neither Heckman nor his counsel objected to any of the conditions of supervised release imposed.

Heckman filed a timely appeal that challenged the special conditions of his supervised release.

### III.  Jurisdiction and Standard of Review

The District Court had jurisdiction to hear this case under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 as an appeal from a final decision of the District Court. We also have jurisdiction under 18 U.S.C. § 3742, as an appeal of a sentence imposed under the Sentencing Reform Act of 1984.

■ Ordinarily, a District Court's sentence is reviewed for "abuse of discretion." *United States v. Martinez,* 785 F.2d 111, 113 (3d Cir.1986). When, as in this case, no objection was made to the conditions imposed by the Court at the sentencing hearing, its decision is reviewed for "plain error." *United States v. Evans,* 155 F.3d 245, 248 (3d Cir.1998). A "plain error" is an " 'error' that is 'plain' and . . . 'affect[s] substantial rights.' " *United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting Fed.R.Crim.P. 52(b)). "For a 'plain error' to "affect[ ] substantial rights," it "must have affected the outcome of the district court proceedings." " *Id.* Even if so, the error must also seriously affect " 'the fairness, integrity[,] or public reputation of judicial proceedings.' " *Id.* (quoting *United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

tion to any victims of the offense." 18 U.S.C. § 3553(a).

## IV. Analysis

■ Though district courts have broad discretion in fashioning special conditions of supervised release, this discretion is not unfettered. "[S]uch conditions must be 'reasonably related to the factors set forth in [§ 3553(a)]' and must 'involve[ ] no greater deprivation of liberty than is reasonably necessary' to deter future crime, protect the public, and rehabilitate the defendant." *United States v. Thielemann*, 575 F.3d 265, 272 (3d Cir.2009) (quoting 18 U.S.C. § 3583(d)(1)-(2)). Furthermore, "courts of appeals have consistently required district courts to set forth factual findings to justify special ... conditions." *United States v. Voelker*, 489 F.3d 139, 144 (3d Cir.2007) (internal quotations omitted). Nevertheless, we "may ... affirm [a special] condition if we can ascertain any viable basis for the ... restriction in the record before the District Court ... on our own." *Id.* (internal quotations omitted). In the end, only a "condition with no basis in the record, or with only the most tenuous basis, will inevitably violate § 3583(d)(2)'s command that such conditions involve no greater deprivation of liberty than is reasonably necessary." *Id.* (internal quotations omitted).

We consider each of the challenged conditions in turn.

### A. The Unconditional Ban on Internet Access

■ As a special condition of his supervised release, Heckman was "prohibited from access to any Internet service provider, bulletin board system, or any other public or private computer network" for the remainder of his life—without exception. App. 6. He challenges this special condition as plain error. We agree. Since this is an area of law that requires a fact-specific analysis, we consider each of our relevant precedents in some detail. Throughout, we remain sensitive to three factors that have guided our prior holdings in this area: (1) the *length* and (2) *coverage* of the imposed ban; and, (3) the defendant's underlying *conduct.*

We first upheld a conditional ban on Internet access in *United States v. Crandon*, 173 F.3d 122 (3d Cir.1999). There the defendant was a 30–year–old resident of New Jersey who met a 14–year–old girl from Minnesota on the Internet. *Id.* at 125. After corresponding online for several months, Crandon traveled from New Jersey to Minnesota and engaged in sexual relations with the girl. *Id.* at 128. The District Court imposed a three-year condition on Crandon's supervised release that directed him "not [to] 'possess, procure, purchase[,] or otherwise obtain access to any form of computer network, bulletin board, Internet, or exchange format involving computers *unless specifically approved by the United States Probation Office.'*" *Id.* at 125 (emphasis added). Therefore, Crandon's ban was both limited (to three years) and conditional (subject to exceptions approved by the Probation Office).[4]

---

4. Even conditional bans raise concerns about the discretion they afford probation officers. As Judge Easterbrook cautions:

> Terms should be established by judges *ex ante,* not probation officers acting under broad delegations and subject to loose judicial review *ex post* .... Courts should do what they can to eliminate open-ended delegations, which create opportunities for arbitrary action—opportunities that are especially worrisome when the subject concerns what people may read. Is the probation officer to become a censor who determines that [the defendant] may read the *New York Times* online, but not the version of *Ulysses* at Bibliomania.com? Bureaucrats acting as guardians of morals offend the first amendment as well as the ideals behind our commitments to the rule of law.

*United States v. Scott,* 316 F.3d 733, 736 (7th Cir.2003) (Easterbrook, J.).

On appeal, we held that the Internet access ban was justified, given Crandon's conduct—namely, that he "used the Internet as a means to develop an illegal sexual relationship with a young girl over a period of several months." *Id.* at 127. With this underlying, directly exploitative conduct in mind, we concluded that the ban was "narrowly tailored and ... directly related to deterring [the defendant] and protecting the public." *Id.* at 128.

Four years later, we refused to uphold a more restrictive, five-year ban in *United States v. Freeman*, 316 F.3d 386 (3d Cir. 2003). There the defendant's offense did not include the direct exploitation of a minor. Instead, it involved the distribution of child pornography by a convicted child molester.[5] The District Court imposed a special condition that was both lengthier (five years rather than three years) and more restrictive (adding a ban on computer equipment in the defendant's residence to a conditional Internet ban).[6]

In spite of Freeman's prior criminal record as a child molester, we struck down this five-year ban as "overly broad," *id.* at 391–92, explaining that, since the defendant had not used the Internet to seduce a minor, there was no need to "cut off Freeman's access to email or benign [I]nternet usage," especially in light of the fact that "a more focused restriction, limited to pornography sites and images, can be enforced by unannounced inspections of material stored on Freeman's hard drive or removable disks." *Id.* at 392. In this, we explicitly distinguished *Crandon*, explaining that "the defendant in *Crandon* used

the [I]nternet to contact young children and solicit inappropriate sexual contact with them." *Id.* Importantly, "[s]uch use of the [I]nternet is ... more difficult to trace than simply using the [I]nternet to view pornographic web sites." *Id.*

In 2007, we rejected a lifetime, unconditional ban on all computer access in *Voelker*. There the defendant engaged in an Internet conversation during which he briefly exposed the buttocks of his three-year-old daughter over a webcam. *Voelker*, 489 F.3d at 146. It was later determined that Voelker, who had no criminal record, also possessed a stockpile of child pornography. *Id.* at 142–43, 146 n. 5. The District Court imposed a special condition that was much lengthier (lifetime rather than three years) and more restrictive (an unconditional computer ban rather than a conditional Internet ban) than the one we upheld in *Crandon*.[7]

On appeal, we struck down this ban as "the antithesis of a 'narrowly tailored' sanction." *Id.* at 145. In so holding, we distinguished *Crandon*, noting the difference in duration of the special conditions imposed, as "Crandon's restrictions remained in place for three years," while "Voelker's restrictions will last as long as he does." *Id.* at 146. We also determined Crandon's offense to be worse than Voelker's, as "Crandon used computers and the [I]nternet to actually seek out, and then communicate with, his victim." *Id.* Finally, we contrasted the coverage of the two bans, as "Crandon was allowed to continue using standalone computers and computer equipment, and he retained the right to

---

5. Freeman was convicted in 1973 of a "perverted sex act" and in 1984 for "sexual assault of a minor." *Freeman*, 316 F.3d at 388.

6. The special condition "prohibited [Freeman] from having any computer equipment in [his] place of residence," and generally banned him from "possess[ing] or us[ing] a computer with access to any on-line computer

service at any location *without the written approval of the Probation Officer.*" *Id.* at 389–90 (emphasis added).

7. The lifetime ban "prohibited [Voelker] from accessing any computer equipment or any 'on-line' computer service at any location, including employment or education." *Id.* at 143.

use the [I]nternet with the consent of the Probation Office. Voelker is not afforded either of those options." *Id.* In the end, we refused to approve "such an all-encompassing, severe, and *permanent* restriction." *Id.* (emphasis added).

Finally, less than a year ago, we upheld a ten-year, conditional ban on Internet access in *Thielemann.* There the defendant pled guilty to one count of receiving child pornography, but this understated the magnitude of his conduct. *Thielemann,* 575 F.3d at 267. Indeed, Thielemann was actively involved in not only distributing child pornography, but also in encouraging (successfully) the direct exploitation of minors.

The District Court sentenced Thielemann to the statutory maximum of 240 months in prison and 10 years of supervised release, including a conditional ban on Internet access.[8] *Id.* at 270. This is the lengthiest ban that we have upheld. In our analysis, we emphasized the relatively limited coverage of Thielemann's ban, noting that he could "own or use a *personal* computer as long as it is not connected to the [I]nternet; thus he is allowed to use word processing programs and other benign software." *Id.* at 278 (emphasis in original). Further, we added that Thielemann "may seek permission from the Probation Office to use the [I]nternet during the term of his ten-year restriction, which is a far cry from the unyielding lifetime restriction in *Voelker.*"

*Id.* Finally, we noted the importance of Thielemann's underlying conduct. He did more than "simply trade child pornography; he [used] [I]nternet communication technologies to facilitate, entice, and encourage the real-time molestation of a child." *Id.* Given this conduct, we concluded that "[t]he restriction on computer and [I]nternet use [was closely related] to the goals of deterrence and protection of the public, and [did] not involve greater deprivation of liberty than is necessary." *Id.*

If upheld, Heckman's ban would be the most restrictive Internet ban that we have permitted—both in terms of the length and coverage of the ban itself and the nature of the defendant's underlying conduct. Considering the ban's length, it is much longer than the three-year ban approved in *Crandon* and the ten-year ban recently approved in *Thielemann.* As for its coverage, it is more restrictive than the Internet bans upheld in *Crandon* and *Thielemann,* both of which included provisions allowing for access to the Internet on approval by the Probation Office. Finally, focusing on the conduct underlying Heckman's conviction, this would be the first time that we have upheld an Internet ban for a conviction involving the transmission of child pornography rather than the direct exploitation of children. In fact, considering these factors collectively, Heckman's special condition would be the broadest Internet ban upheld by any Circuit Court to date.[9] Even the Government

---

**8.** This special condition prevented Thielemann from "own[ing] or operat[ing] a personal computer with Internet access in a home or at any other location, including employment, *without prior written approval of the Probation Office."* *Thielemann,* 575 F.3d at 270 (emphasis added).

**9.** The Internet bans cited in the Government's brief are each for limited periods of time. *See* Appellee's Brief 35; *see, e.g., United States v. Paul,* 274 F.3d 155 (5th Cir.2001) (upholding a three-year ban on Internet access). To our

knowledge, only the Eighth Circuit Court has upheld a lifetime ban on either Internet or computer access in a precedential opinion. *See United States v. Stults,* 575 F.3d 834 (8th Cir.2009) (upholding a lifetime, conditional ban on Internet access); *United States v. Boston,* 494 F.3d 660 (8th Cir.2007) (same); *United States v. Alvarez,* 478 F.3d 864 (8th Cir.2007) (same). In upholding these special conditions, the Eighth Circuit has emphasized the importance of "a sufficient nexus" between the use of the Internet and the direct exploitation of children. *Alvarez,* 478 F.3d at

concedes that this condition's validity is "a close question." Appellee's Brief 26.

There is little doubt that Heckman's extensive history as a sex offender justifies appropriate restrictions whenever he is released from prison. To repeat, the District Court recognized that Heckman's criminal conduct was "almost unbroken from the time he was nineteen years old until today at age forty-eight." App. 49–50. For this understandable reason, the Government argues that the "most significant" factor in this case is that "Heckman presents a record of sexual abuse of children which is not remotely matched in any of this Court's prior cases." Appellee's Brief 32.

This record cannot be ignored. However, Heckman's criminal history alone does not justify the unprecedented ban on Internet access imposed by the District Court in this case. Indeed, we have long recognized the draconian nature of Inter-

net bans—even in cases where we have upheld them. *See, e.g., Crandon,* 173 F.3d at 128 ("[The three-year ban on Internet access] may hamper [the defendant's] employment opportunities upon release, as well as limit his freedoms of speech and association.").[10] Furthermore, even when faced with a well-established sex offender, special conditions still must be tailored to the underlying conduct at issue in the given case, as well as any related actions in the defendant's criminal past.

Heckman is undoubtedly a serial offender. Yet he has never been convicted of criminal behavior that involved the use of the Internet either to lure a minor into direct sexual activity (such as Crandon) or to entice another to exploit a child directly (such as Thielemann). In cases upholding similar (though less restrictive) Internet bans, the predatory use of the Internet *in the act itself* was essential to our holding. In cases involving the straight transmission or possession of child pornography,

---

867; *see also Boston,* 494 F.3d at 668 ("A restriction on computer usage does not constitute an abuse of discretion if the district court has found that the defendant used his computer to do more than merely possess child pornography, particularly if the prohibition on computer usage is not absolute.").

Even so, not even that Court has approved an *unconditional* ban on Internet access. *See, e.g., Stults,* 575 F.3d at 841 (upholding a special condition that prohibits the defendant "from using or having access to any electronic media that has [I]nternet service or photography capability without express permission from United States Probation Office" or "for purposes of his employment"); *Boston,* 494 F.3d at 664 (upholding a special condition that "prohibits [the defendant] from accessing or possessing computers without prior written approval of his probation office"); *Alvarez,* 478 F.3d at 865 (noting that the defendant may "not have Internet access at his residence and that he have Internet access in other locations only with prior approval of the probation office").

Finally, in recent months, the Fifth and Eleventh Circuit Courts have upheld lifetime

bans on either Internet or computer access in not precedential opinions. *See United States v. Fortenberry,* 2009 WL 3428403, at *1 (5th Cir. Oct.26, 2009) (upholding a conditional ban that barred the defendant "from using the [I]nternet without prior written permission from his probation officer"); *United States v. West,* 333 Fed.Appx. 494, 495 (11th Cir.2009) (upholding "a lifetime prohibition on [the defendant's] use of a computer other than for employment purposes"); *United States v. Dove,* 343 Fed.Appx. 428, 431–32 (11th Cir.2009) (upholding a special condition calling for the defendant to "refrain from possessing or using a computer with Internet service").

10. *See also Voelker,* 489 F.3d at 145 ("The ubiquitous presence of the [I]nternet and the all-encompassing nature of the information it contains are too obvious to require extensive citation or discussion."); *Freeman,* 316 F.3d at 392 ("[A] total ban on [I]nternet access prevents use of email, an increasingly widely used form of communication, and other common-place computer uses such as getting a weather forecast or reading a newspaper online.").

such as *Freeman*, we rejected the ban. To uphold Heckman's ban under our precedent, we would have to make the inferential leap that, given his criminal history, it is likely that he will eventually use the Internet to exploit a minor directly (and do so late in his 70s)—not just distribute child pornography. Although such an inference may be plausible, there is no indication that Heckman has ever used the Internet for such a purpose. Furthermore, there are alternative, less restrictive, means of controlling Heckman's post-release behavior,[11] including the computer monitoring condition already imposed by the District Court in this case (and that Heckman has not challenged).[12]

We do not hold that limited Internet bans of shorter duration can never be imposed as conditions of supervised release for this type of conduct, but when placed within the context of related precedents, the unconditional, lifetime ban imposed by the District Court in this case is so broad and insufficiently tailored as to constitute "plain error." We thus hold that this ban involved a "greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d)(2).

### B. The Mental Health Requirement

■ Heckman also challenges the mental health condition imposed on him by the District Court as an impermissible delegation of judicial authority to the United States Probation Office. The challenged condition states: "The defendant shall participate in a mental health program for evaluation and/or treatment as directed by the United States Probation Office. The defendant shall remain in treatment until satisfactorily discharged and with the approval of the United States Probation Office, including sex offender treatment." App. 6. There is ample support for this special condition in the record. For instance, Heckman's extensive criminal history of exploiting children alone demonstrates a "proclivity for committing sexual offenses involving minors and child pornography and [an] apparent inability to control himself." *Id.* at 56–57. Such a proclivity undoubtedly justifies a mental health treatment program.

The question remains, however, whether the challenged condition delegates too much authority to the Probation Office. We think not in this case.

In challenging that condition, Heckman relies heavily on our decision in *United States v. Pruden*, 398 F.3d 241 (3d Cir. 2005). The special condition we rejected there seems on its face similar to the one here. It read: "The defendant shall participate in a mental health treatment program at the discretion of the probation

---

11. Heckman offers alternative options in his brief, including the "use of software that filters and controls accessible content, and/or software that monitors use of the [I]nternet." Appellant's Brief 19–20.

12. This unchallenged condition provided for extensive computer monitoring, paid for by Heckman:

The defendant shall submit to an initial inspection by the United States Probation Office and to any examinations during supervision of the defendant's computer and any devices, programs, or applications. The defendant shall allow the installation of any hardware or software systems which monitor or filter computer use. The defendant shall abide by the standard conditions of computer monitoring and filtering that will be approved by this Court. The defendant is to pay the cost of the computer monitoring not to exceed the monthly contractual rate, in accordance with the probation officer's discretion.

App. 6. At Heckman's sentencing hearing, the District Court did not discuss any alternative options to the unconditional Internet ban that it ultimately imposed. In addition, it did not explain its reasons for reaching beyond the computer monitoring condition to include an unconditional ban on Internet access.

officer."[13] *Id.* at 248. Even while striking down this condition, we conceded that "probation officers must be allowed some discretion in dealing with their charges," as "courts cannot be expected to map out every detail of a defendant's supervised release." *Id.* at 250.

■ The principle is that we must "balance[ ] the need for flexibility with the constitutional requirement that judges, not probation officers, set the terms of a sentence." *Id.* at 251. It works out practically as follows:

> If [the defendant] is required to participate in a mental health intervention only if directed to do so by his probation officer, then this special condition constitutes an impermissible delegation of judicial authority to the probation officer. On the other hand, if the District Court was intending nothing more than to delegate to the probation officer the details with respect to the selection and schedule of the program, such delegation was proper.

*Id.* (*quoting United States v. Peterson,* 248 F.3d 79, 85 (2d Cir.2001)).

There were special, fact-specific circumstances in *Pruden* that led us to reject the latter reading of the condition. The mental health condition was "not recommended in the [Presentence Report] or requested by the government," *id.* at 245; there was no evidence of, and no findings for, the need for mental health treatment, *id.* at 249, 251 n. 5; and, to seal the matter, at oral argument "the [G]overnment conceded ... that the District Court did *not* intend the probation officer's discretion to extend only to the choice of particular

programs." *Id.* at 251 n. 5 (emphasis added).

In our case, however, Heckman's extensive history of exploiting children certainly supports reading the condition as a permissible form of delegation. Furthermore, unlike in *Pruden,* the Government here did not concede that the probation officer's discretion in our case extended past the choice and scheduling of particular mental health programs. For instance, when Heckman requested a specific correctional facility at his sentencing hearing, the Government emphasized the importance of providing mental health treatment during the time of his incarceration, insisting that Heckman be housed in a facility with "some type of sex offender treatment." App. 41–42.

Finally, we concede that, taken in isolation, it is possible to read the phrase "shall participate in a mental health program for evaluation *and/or* treatment" as allowing the Probation Office to order evaluation but not treatment—a potentially impermissible delegation of authority under *Pruden. Id.* at 6 (emphasis added). The second sentence of the release condition, however, leads us to reject such a reading, as Heckman "*shall* remain in treatment ..., including sex offender treatment," a clause most naturally read as requiring mandatory treatment and thus limiting the Probation Office's discretion. *Id.* (emphasis added).

In this context, we read Heckman's provision as permissibly " 'delegat[ing] to the probation officer the details with respect to the selection and schedule of [the defendant's mental health treatment] pro-

---

13. Though these two provisions are superficially similar, they arguably carry slightly different meanings—with the language in *Pruden* ("at the discretion of") possibly more openended than the language in our case ("as directed by"). It is clear, however, that the reading in *Pruden* did not turn on any semantic differences, but instead on the lack of any evidence to support the District Court's imposition of the mental health condition. This renders *Pruden* quite unlike our case.

gram.'" *Pruden,* 398 F.3d at 251 (*quoting Peterson,* 248 F.3d at 85). Participation in the mental health treatment program itself is mandatory, and only the details are to be set by the Probation Office. Thus, we see no "plain error" in imposing Heckman's mental health condition of supervised release.

### C. The Restriction on Contact with Minors

■ Heckman's final challenge is to the "no minors" condition imposed by the District Court as an improper delegation of authority to the Probation Office. The challenged provision states:

The defendant shall follow the directions of the United States Probation Office regarding any contact with children of either sex under the age of 18. The defendant shall not obtain employment or perform volunteer work which includes, as part of its job/work description, contact with minor children.

App. 6.

On its face this condition delegates full discretion over Heckman's contact with minors to the Probation Office. Even the Government concedes that this condition should be rejected as an improper delegation of authority to the Probation Office and remanded to the District Court for

further clarification. *See* Appellee's Brief 46. We agree.

■ Under *Pruden,* "[t]he most important limitation [on the District Court's power to delegate] is that a probation officer may not decide the nature or extent of the punishment imposed upon a probationer." *Pruden,* 398 F.3d at 250. "This limitation extends not only to the length of a prison term imposed, but also to the conditions of probation or supervised release." *Id.* In *Voelker,* we struck down a similar "no minors" condition [14] as "delegat[ing] absolute authority to the Probation Office to allow any such contacts [with minors] while providing no guidance whatsoever for the exercise of that discretion." 489 F.3d at 154. In that situation, the "Probation Officer bec[ame] the sole authority for deciding if Voelker w[ould] ever have unsupervised contact with any minor, including his own children, for the rest of his life." *Id.* We therefore barred such "unbridled delegation." *Id.*

We agree with the parties and hold that Heckman's "no minors" condition is an impermissible delegation of authority to the Probation Office and thus constitutes "plain error." [15]

\*　\*　\*　\*　\*　\*

Cases involving child pornography are among the most troubling we encounter. The victims are innocent and defenseless, the materials illicit and timeless. [16] Heck-

---

**14.** The District Court there imposed a special condition that "[t]he defendant shall not associate with children under the age of 18 except in the presence of a responsible adult who is aware of the defendant's background and current offense and who has been approved by the probation officer." *Voelker,* 489 F.3d at 154.

**15.** Even if the "no minors" condition did not give discretion to probation officers, we have required limitations on association with minors to be tailored to the specific situations involved and not to be broader than necessary to avoid the harm the Court is concerned with. *Voelker,* 489 F.3d at 154–55 (remanding for clarification on the intended scope of a

"no minors" condition that potentially included an offender's own children); *see also United States v. Loy,* 237 F.3d 251, 270 (3d Cir. 2001) (construing narrowly a "no minors" condition that potentially included a childless offender's future children).

**16.** As the District Court noted at Heckman's sentencing hearing,

It may be that we don't know who [the children] are, but someone knows who they are and could find out, which is part of the horrible consequences of child pornography; children who are victimized at an age when they don't have the discretion or the ability to protect themselves [a]re victim-

man emailed 18 images of children engaging in sexually explicit conduct to a stranger in an Internet chat room. This was only the latest offense by a lifelong sexual predator, and it was appropriate for the District Court to sentence him to 15 years' imprisonment and a lifetime term of supervised release.

Yet the Court's discretion in these matters (though justifiably broad) is not unlimited. When imposing special conditions of supervised release, it is limited to those conditions that "involve[ ] no greater deprivation of liberty than is reasonably necessary." 18 U.S.C. § 3583(d)(2). Furthermore, the Court may not delegate to a probation officer the authority to "decide the nature or extent of the punishment imposed upon a probationer." *Pruden*, 398 F.3d at 250. In vacating certain of the District Court's special conditions in this case, we do not mean to question the need for release supervision responsive to Heckman's specific offense and his lifetime of misdeeds. To do so, however, requires a balancing of considerations that affect not only this case, but those that follow.

For these reasons, we affirm the mental health condition imposed by the District Court as one of the conditions of supervised release. However, we vacate the special conditions pertaining to Internet access and interaction with minors. Thus we remand for resentencing consistent with this opinion.

ized in a way where they continue to be victimized each time the images are replayed or redepicted or circulated.