**UNITED STATES of America,**

v.

**Anthony VAZQUEZ, a/k/a Eziequ Vasquez**

**Anthony Vazquez, Appellant.**

**No. 08–4696.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Jan. 14, 2010.

Opinion filed: May 25, 2010.

---

Karen S. Marston, Esq., Office of United States Attorney, Philadelphia, PA, for United States of America.

David L. McColgin, Esq., Rossman D. Thompson, Jr., Esq., Defender Association of Philadelphia, Philadelphia, PA, for Appellant.

Before: AMBRO, CHAGARES, and STAPLETON, Circuit Judges.

OPINION

AMBRO, Circuit Judge.

Anthony Vazquez pled guilty to one count of possession of a firearm by a convicted felon. His sentence included 198 months' imprisonment. In this appeal, he brings two challenges to his sentence: 1) that the District Court delegated an impermissible level of authority to the Probation Office to control the alcohol and mental health treatment that Vazquez would receive during his supervised release; and 2) that the District Court's decision to apply the statutory mandatory minimum to Vazquez as an armed career criminal violated the Fifth and Sixth Amendments. We reject both of these challenges, and therefore will affirm.

I.

In May 2007, the Philadelphia Police Department set up surveillance in a high-crime area of Philadelphia. Within 20 minutes of arriving at this location, the surveillance officers saw two drug dealers complete multiple drug deals. In each case, the officers saw the customers approach the dealers and briefly converse with them. Following this short conversa-

tion, one of the drug dealers would retrieve a concealed bag from a nearby wall. The dealer would then remove items from the bag and exchange them for money. Following each transaction, the surveillance officers provided backup officers with a description of the customer.

Vazquez was one of the customers that the surveillance officers observed during this period. After watching his drug transaction, the officers provided a description of Vazquez and his car to backup officers nearby. The backup officers then conducted an investigatory stop of Vazquez's car. During the stop, the officers asked the driver and three passengers (Vazquez included) to get out of the car. Vazquez complied, but then began running. While running, he threw a jar to the ground. The officers then caught Vazquez and struggled to secure him. During the struggle, they noticed a gun sticking out of his pants. Eventually, the officers subdued Vazquez and recovered his loaded gun. The officers also seized the jar that he had discarded, which contained 469 milligrams of PCP. Following his arrest, Vazquez gave the officers an alias instead of his true name.

## II.

In July 2007, a grand jury indicted Vazquez for one count of possession of a firearm by a convicted felon under 18 U.S.C. §§ 922(g)(1) and 924(e). The indictment alleged that he previously had been convicted of a "crime punishable by imprisonment for a term exceeding one year," but did not allege that he had three prior convictions for "serious drug offenses." In March 2008, Vazquez pled guilty.

In November 2008, the District Court held a sentencing hearing. During this hearing, the Government offered evidence that Vazquez had three prior felony drug convictions—each of which qualified as a

"serious drug offense" under 18 U.S.C. § 924(e). Agreeing with the Government, the District Court concluded by a preponderance of the evidence that Vazquez had been convicted of these prior offenses and therefore qualified for a sentencing enhancement under the Armed Career Criminal Act ("ACCA").

Vazquez admitted during the hearing that he had a drug addiction. Furthermore, his mother and a family friend testified that they were aware of Vazquez's substance abuse problems. This tracked the Presentence Report ("PSR"), which noted that Vazquez admitted to "a poly substance abuse history involving alcohol, barbiturates, cocaine powder, marijuana, and PCP." Vazquez's substance abuse dated back to when he was 13 years old. In the PSR, Vazquez also reported "a mental health treatment history dating back to adolescence." In particular, Vazquez admitted that he had been diagnosed with bipolar disorder while previously in custody. Furthermore, in 2003 he had been taken to a psychiatric unit because he was "overwhelmed with stress due to his finances, having young children, and life in general."

In imposing Vazquez's sentence, the District Court considered the 18 U.S.C. § 3553(a) factors. The Court stressed that this was Vazquez's seventh criminal conviction—representing an unbroken criminal record dating back to when he was a 12–year–old. The Court also referenced Vazquez's substance abuse problem, which had impeded both his educational and employment opportunities. In the end, the Court imposed a sentence of 198 months' imprisonment, five years of supervised release, a $1,500 fine, and a $100 assessment. Vazquez filed a timely appeal.

## III.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

We ordinarily review the District Court's sentence for abuse of discretion. *See United States v. Martinez*, 785 F.2d 111, 113 (3d Cir.1986). However, we review conditions of supervised release that were not objected to previously (such as those at issue in this appeal) for plain error. *See United States v. Evans*, 155 F.3d 245, 248 (3d Cir.1998). Finally, we exercise plenary review over a District Court's legal conclusions. *See United States v. Barbosa*, 271 F.3d 438, 452 (3d Cir.2001).

## IV.

In this appeal, Vazquez challenges his sentence on two grounds: 1) that the District Court delegated an impermissible level of authority to the Probation Office to control conditions of his supervised release; and 2) that the District Court's decision to apply the sentencing enhancement under the ACCA violated the Fifth and Sixth Amendments. We consider each challenge in turn.

### A. Vazquez's Supervised Release Conditions

The challenged conditions of Vazquez's supervised release read as follows:

The defendant shall refrain from use of alcohol and shall submit to testing to ensure compliance. It is further ordered that the defendant submit to evaluation and treatment as directed by the U.S. Probation Office. The defendant shall abide by the rules of any program and remain in treatment until satisfactorily discharged with the approval of the U.S. Probation Office.

. . .

The Defendant shall participate in a mental health program for evaluation and/or treatment as directed by the Probation Office[,] and he shall remain in treatment until satisfactorily discharged with the approval of the U.S. Probation Office.

App. 6. Vazquez argues that these conditions run afoul of our holding in *United States v. Pruden*, 398 F.3d 241 (3d Cir. 2005). Although we concede that his challenges present close questions under *Pruden*, we conclude that they fail under our recent decision in *United States v. Heckman*, 592 F.3d 400 (3d Cir.2010).

"[P]robation officers must be allowed some discretion in dealing with their charges," as "courts cannot be expected to map out every detail of a defendant's supervised release." *Pruden*, 398 F.3d at 250. Yet we must "balance[ ] the need for flexibility with the constitutional requirement that judges, not probation officers, set the terms of a defendant's sentence." *Id.* at 251. Therefore, we have endorsed the following test:

If [the defendant] is required to participate in a mental health intervention only if directed to do so by his probation officer, then this special condition constitutes an impermissible delegation of judicial authority to the probation officer. On the other hand, if the District Court was intending nothing more than to delegate to the probation officer the details with respect to the selection and schedule of the program, such delegation was proper.

*Id.* at 250–51 (*quoting United States v. Peterson*, 248 F.3d 79, 85 (2d Cir.2001)); *see also Heckman*, 592 F.3d at 410.

In *Pruden*, the District Court imposed a mental health condition similar (though not identical) to the mental health condition at issue in this case. The condition in *Pruden* read as follows: "The defendant shall

participate in a mental health treatment program at the discretion of the probation officer." *Pruden*, 398 F.3d at 248. Unlike Vazquez's case, however, none of the circumstances surrounding Pruden's underlying offense or personal history suggested the need for mental health treatment. Indeed, the PSR "tend[ed] to show that Pruden has a generally good mental state with no history of mental illness." *Id.* at 249. Given this, we noted:

> It is theoretically possible to read the sentence, "The defendant shall participate in a mental health treatment program at the discretion of the probation officer[ ]" to mean that the probation officer shall have discretion only to choose the particular program, but that participation in some such treatment program is mandatory. On this interpretation, the delegation would be permissible. The facts of this case, however—and, in particular, the lack of any specific findings that Pruden needs such mental health treatment—make it an implausible reading. At all events, the government conceded at oral argument that the District Court did not intend the probation officer's discretion to extend only to the choice of particular programs.

*Id.* at 251 n. 5.

As we recently concluded in *Heckman*, "[t]here were special, fact-specific circumstances in *Pruden* that led us to reject" reading the mental health condition as providing the probation officer with "discretion only to choose the particular program," but rendering "some such treatment program ... mandatory." *Heckman*, 592 F.3d at 410. We explained:

The mental health condition [in *Pruden* ] was "not recommended in the [PSR] or requested by the government" ...; there was no evidence of, and no findings for, the need for mental health treatment, ...; and, to seal the matter, at oral argument "the [G]overnment conceded ... that the District Court did *not* intend the probation officer's discretion to extend only to the choice of particular programs."

*Id.* (*quoting Pruden*, 398 F.3d at 245, 249, 251 n. 5) (emphasis in original). Given this reading of *Pruden*, we upheld Heckman's mental health condition, noting that his "extensive history of exploiting children ... supports reading the condition as a permissible form of delegation." *Id.* Furthermore, "the Government ... did not concede that the probation officer's discretion ... extended past the choice and scheduling of particular mental health programs." *Id.* With these key cases in mind, we consider in turn each of Vazquez's challenged conditions.

### 1. The Mental Health Condition

■ The District Court ordered that Vazquez "*shall* participate in a mental health program for evaluation and/or treatment as directed by the Probation Office[,] and he *shall* remain in treatment until satisfactorily discharged with the approval of the U.S. Probation Office." App. 6 (emphases added). Importantly, this condition is almost identical to the one we recently upheld in *Heckman*. 592 F.3d at 409–11.[1] As in *Heckman*, we concede that the phrase "shall participate in a mental health program for evaluation *and/or* treatment," taken in isolation, could be read "as allowing the Probation

---

1. In *Heckman,* the mental health condition read as follows: "The defendant shall participate in a mental health program for evaluation and/or treatment as directed by the United States Probation Office. The defendant shall remain in treatment until satisfactorily discharged and with the approval of the United States Probation Office...." 592 F.3d at 409.

Office to order evaluation but not treatment—a potentially impermissible delegation of authority under *Pruden.*" *Id.* at 410 (emphasis in original). However, as in *Heckman,* the remainder of the condition "leads us to reject such a reading." *Id.* Indeed, each condition further provides that the defendant "*shall* remain in treatment," App. 6 (emphasis added), language which is "most naturally read as requiring mandatory treatment and thus limiting the Probation Office's discretion." *Heckman,* 592 F.3d at 410. As such, we conclude that the text of the condition is best read as providing that "[p]articipation in the mental health treatment program itself is mandatory," with "only the details . . . set by the Probation Office." *Id.* at 411.

As in *Heckman* (but not *Pruden* ), this reading is bolstered by the record. Indeed, the PSR noted that Vazquez had a "mental health treatment history dating back to adolescence," had been diagnosed with bipolar disorder in 2000, and was taken to a psychiatric unit in 2003 when, as already noted, "he became overwhelmed with stress due to his finances, having young children, and life in general." For these reasons, we hold that the District Court's imposition of the mental health condition was not plain error.

### 2. The Alcohol Treatment Condition

■ The District Court also directed that Vazquez refrain from alcohol use and submit to testing for alcohol consumption. In addition, the Court required him to "submit to evaluation and treatment as directed by the U.S. Probation Office." App. 6. Moreover, Vazquez "*shall* abide by the rules of any program and remain in treatment until satisfactorily discharged with the approval of the U.S. Probation Office." App. 6. (emphasis added). We conclude that this condition also satisfies the requirements of *Pruden* and *Heckman.*

First, just as there was support in the record for the mental health condition in *Heckman,* there is support for the alcohol treatment condition in this case. To repeat, the PSR concluded that Vazquez had a "poly substance abuse history involving alcohol, barbiturates, cocaine powder, marijuana, and PCP, dating back to age 13." Furthermore, Vazquez attended an outpatient program for substance abuse in 1999. He was also admitted to an inpatient program that same year, but left against medical advice approximately two weeks later. While participating in the inpatient program, Vazquez "was described as showing no interest in participating."

Furthermore, during Vazquez's sentencing hearing, his mother and a family friend both confirmed his long history of substance abuse. *See, e.g.,* App. 220–21 (noting that Vazquez "does have a drug problem," and that no one ever "bother[s] to put him in a program and give him the help he needs"); App. 223 (acknowledging Vazquez's addiction issues and explaining that he is "a sweetheart" and "very good person" when he is sober). Vazquez's counsel also acknowledged that Vazquez "ha[d] a drug problem" and needed "treatment." App. 216. Finally, Vazquez himself explained, "I'm an addict, I'm always going to be an addict. . . . I could be clean for ten years and one day pick up a drink and—and become an addict again 'cause I'm always gonna be an addict." App. 230. With regard to alcohol consumption in particular, prior to his arrest Vazquez "primarily drank alcoholic beverages on Fridays and Saturdays," averaging between "a few beers to a six-pack of beer per night."

Second, just as in *Heckman,* the alcohol treatment condition in this case delegates a permissible level of authority to the Probation Office. While delegating some administrative duties to the Probation Office,

the condition *"order[s]* [that] the defendant submit to evaluation *and* treatment as directed by the U.S. Probation Office." App. 6 (emphases added). In addition, the condition provides that Vazquez *"shall* abide by the rules of any [alcohol treatment] program and remain in treatment until satisfactorily discharged." App. 6 (emphasis added). This language, coupled with Vazquez's alcohol abuse history, leads us to conclude that the condition provides for mandatory alcohol treatment. Indeed, we read this condition as requiring Vazquez's participation in alcohol treatment, while permissibly delegating to the Probation Office the task of identifying the specific program, monitoring Vazquez's treatment, and officially signing off on Vazquez's (possible) discharge after successful completion of the program. As such, we hold that the District Court did not plainly err in imposing the alcohol treatment condition.

## B.   The Armed Career Criminal Act

■ Finally, we turn to Vazquez's constitutional challenge to the District Court's decision to apply the sentencing enhancement under the ACCA without treating his prior felony convictions as elements of the offense and charging them in the indictment. In Vazquez's view, this runs afoul of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In particular, he argues that, since his prior convictions increased his sentence under the ACCA, those convictions should have been charged in the indictment as elements of the offense and proved to a jury beyond a reasonable doubt. Given this, Vazquez concludes that the sentence imposed violates his constitutional rights under the Fifth and Sixth Amendments—notwithstanding controlling precedent.

In *Almendarez–Torres v. United States,* the Supreme Court held that the existence of prior convictions that increase the statutory maximum sentence may be determined by the District Court at sentencing and need not be included in the indictment or established as an element of the offense. 523 U.S. 224, 226–27, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). We have recently confirmed that *Almendarez–Torres* remains controlling authority in this Circuit, including in the context of the ACCA. *See, e.g., United States v. Weatherly,* 525 F.3d 265, 273–74 (3d Cir.2008) (rejecting a similar challenge to the ACCA); *United States v. Coleman,* 451 F.3d 154, 161 (3d Cir. 2006) ("[A]s the Supreme Court's decision in *Almendarez–Torres* remains good law . . ., Coleman's argument regarding the Government's failure to prove his prior convictions to the jury beyond a reasonable doubt is unpersuasive."); *United States v. Ordaz,* 398 F.3d 236, 240 (3d Cir.2005) ("Ordaz's argument that the fact of a prior conviction must be found by a jury was rejected by the Supreme Court in *Almendarez–Torres.* . . ."). With this in mind, Vazquez concedes that he is simply preserving this issue for further review, should the Supreme Court reconsider *Almendarez–Torres.* *See* App. 197 (conceding that *Almendarez–Torres* is "still good law"); *see also* Appellant's Br. 7 ("Counsel recognizes that *Almendarez–Torres* . . . is to the contrary . . ., but raises this issue to preserve it for further review and for adjudication should the Supreme Court overrule *Almendarez–Torres.*"). In this context, we reject Vazquez's constitutional challenge to his sentencing enhancement under the ACCA.

\*     \*     \*     \*     \*     \*

For these reasons, we affirm the judgment of the District Court.