NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3710
_____

UNITED STATES OF AMERICA

v.

JASON SCALISE,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 07-cr-00052)
District Judge:  Honorable Maurice B. Cohill, Jr.
_____

Submitted Under Third Circuit LAR 34.1(a)
October 19, 2010

Before:  HARDIMAN, GREENAWAY, JR. and NYGAARD, *Circuit Judges*.

(Filed:  October 27, 2010)
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Jason Scalise appeals the District Court's judgment of sentence following his guilty pleas to two counts: (1) receipt of child pornography; and (2) possession of child pornography, in violation of 18 U.S.C. § 2252(a)-(b).  We will affirm.

I.

Because we write for the parties, we recount only the essential facts and procedural history.

On October 18, 2007, the Federal Bureau of Investigation searched Scalise's residence after a computer technician reported that he had found files containing child pornography on the hard drive of Scalise's computer. The FBI discovered 33 movie clips and another 43 disks containing approximately 200 movies and 500 still images of child pornography.

After admitting to downloading and sharing child pornography on Limewire two to three times per week, Scalise pleaded guilty to: Receipt and Attempted Receipt of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2252(a)(2) and § 2252(b)(1), and Possession and Attempted Possession of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2252(a)(4)(B) and § 2252(b)(2).

The District Court determined that Scalise's base offense level was 22, and his criminal history category was I. Scalise received a three-level reduction for acceptance of responsibility, and a total of 18 levels of enhancements pursuant to § 2G2.2 of the Guidelines—for distribution in exchange for a thing of value (5 levels), material involving prepubescent minors (2 levels), images containing sadistic or violent acts (4 levels), use of a computer (2 levels), and possession of more than 600 images (5 levels). Thus, Scalise's total offense level reached 37, resulting in a Guidelines imprisonment

range of 210 to 262 months. Because Scalise's statutory range was 60-240 months, his final Guidelines range was 210-240 months.

Although Scalise conceded that his Guidelines range was calculated properly, he argued in his written position with respect to sentencing factors that his Guidelines range "is so far beyond the circumstances of his case as to be unjustified and unwarranted." Scalise also contended that "there appears to be no rhyme, reason or justification for an almost arbitrary increase from a base offense level of 22 and a sentence of 41 to 51 months to offense level 37 or 210 to 262 months."

The District Court sentenced Scalise to 168 months in prison on Count One and 120 months on Count Two, to be served concurrently, followed by ten years of supervised release, which included the following special condition:

> The defendant shall not associate with children under the age of 18, except in the presence of a responsible adult who is aware of the nature of the defendant's background and current offense and who had been approved by the probation officer.

The District Court varied downward from the Guidelines range, finding that USSG § 2G2.2 "diverges significantly from the Sentencing Commission's typical empirical approach and produces a sentence greater than necessary to provide punishment." App. 78-79 (quoting *United States v. Hanson*, 561 F. Supp. 2d 1004, 1008 (E.D. Wis. 2008)). Considering Scalise's lack of a criminal history, his supportive family structure, his demonstration of remorse for the crimes he committed, and his decision to seek out psychological sex offender treatment, the District Court reasoned that a sentence of 210

3

months in prison "would be over the top." The Court then concluded that a sentence of 168 months "adequately addresses the nature and the circumstances of this offense, as well as the history and background of the Defendant."

## II.

Scalise timely appealed, claiming the District Court committed procedural error by: (1) relying on allegedly inaccurate and disparaging statements made by the FBI agent and prosecutor at sentencing; (2) failing to rule on his motion to depart from the Guidelines based on a psychological finding that he "does not meet the criteria of pedophilia"; and (3) failing to meaningfully address his non-frivolous arguments challenging the validity of § 2G2.2's enhancements for specific offense characteristics. Scalise also claims his sentence was substantively unreasonable because it was "greater than necessary . . . to comply with the purposes of sentencing."

## A.

We review the procedural and substantive reasonableness of Scalise's sentence under an abuse of discretion standard. *United States v. Booker*, 543 U.S. 220, 261 (2005); *United States v. Tomko*, 562 F.3d 558, 577 n.16 (3d Cir. 2009) (*en banc*).

Conceding that the District Court accurately calculated his Guidelines range as required by the first step of *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006), Scalise claims the District Court failed at step two when it ignored his counsel's "request" for a downward departure based on his psychologist's finding that he "does not meet the DSM-IV criteria for Pedophilia." But the record reflects no such formal request for

departure.[1]  Even had such a request been made, § 5K2.0 greatly limits the grounds for departure and the fact that a defendant does not exhibit pedophilic tendencies is not one of them.

Scalise also claims the District Court erred at step three of *Gunter*.  He cites as procedural error the District Court's consideration of improper testimony and its failure to address his arguments regarding the flawed nature of § 2G2.2.  Specifically, Scalise contends the District Court should not have considered the FBI agent's statement that, given the number of images in Scalise's collection, it was apparent that he had been trading for a "fairly lengthy course of time."  In addition, Scalise argues that the Court should not have taken into account the prosecutor's assertions that Scalise's collection of adult female underwear was "extremely bizarre" and "an indicator of some deviate sexual activity."  This argument is a non-starter because there is nothing inaccurate about these statements: nine months can properly be characterized as a "lengthy period of time," and the "bizarreness" of Scalise's behavior is a matter of opinion.  Moreover, nothing in the record suggests that the District Court relied on these statements in determining the seriousness of Scalise's offense.

Nor are we persuaded by Scalise's argument that the District Court failed to

---

[1] We agree with the Government that the statement made by Scalise's attorney that a psychological report should "in the appropriate circumstances to be determined by the Court, allow for a free fall, what it used to be called, now a departure [sic]," did not amount to a formal departure request.  Thus, Scalise's reliance on *United States v. Lofink* is misplaced.  *See* 564 F.3d 232, 240 (3d Cir. 2009) (where the defendant formally moved for a downward departure under § 5K2.13 of the Guidelines).

adequately address his brief comments at sentencing regarding the validity of the individual enhancements applicable to his case. A sentencing court must give "meaningful consideration to all the sentencing factors in 18 U.S.C. § 3553(a)," *United States v. Olhovsky*, 562 F.3d 530, 546 (3d Cir. 2009), and "the record must show a true, considered exercise of discretion on the part of a district court, including a recognition of, and response to, the parties' non-frivolous arguments," *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006).

Although Scalise states in his Reply Brief that his counsel discussed "at length" the five individual sentencing enhancements applied to his case, we find only brief and undeveloped references to a lack of empirical data supporting these "artificial increases." Scalise's counsel made no attempt at sentencing to substantiate his claims, instead arguing: "I don't know [w]hat the empirical data or the scientific data or the psychological data is—I don't think there is any."

Given the lack of a factual record upon which to base its analysis, the District Court's decision not to address each applicable enhancement individually was not procedural error. *See United States v. Ausburn*, 502 F.3d 313, 329 (3d Cir. 2007). Moreover, while the District Court did not address each enhancement individually, it agreed with Scalise that § 2G2.2 was not grounded in the Commission's "typical empirical approach." *See* App. 78-79 (quoting *Hanson*, 561 F. Supp. 2d at 1008). For that reason, the District Court varied downward.

Thus, Scalise's real argument is that the District Court's analysis of the § 3553(a)

6

factors yielded a higher sentence than Scalise desired. "The decision by the Court, however, not to give . . . mitigating factors the weight that [Scalise] contends they deserve does not render [his] sentence unreasonable." *United States v. Lessner*, 498 F.3d 185, 204 (3d Cir. 2007) (citing *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007)). Because the Court adequately considered the § 3553(a) factors at step three, Scalise's term of incarceration was not imposed in a procedurally unreasonable way.

B.

Scalise also claims that his 168-month prison sentence, which "is closer to the statutory maximum of 20 years than the mandatory minimum of five years" is substantively unreasonable. We must affirm "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568.

Our review of the record leads us to conclude that there was nothing substantively unreasonable about the District Court's imposition of a 168-month prison sentence. Indeed, "the sentence as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *Id.* (quoting *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) (en banc)). The fact that Scalise's sentence is more than forty months below the low end of the Guidelines range influences our decision as well.

For the foregoing reasons, we hold that the District Court did not err with respect to Scalise's 168-month prison sentence.

III.

7

Scalise also challenges the special condition of supervised release which restricts his interaction with minors. Because Scalise did not object to the District Court's imposition of this special condition at the sentencing hearing, we review it for plain error.[2] *United States v. Russell*, 564 F.3d 200, 203 (3d Cir. 2009).

Although sentencing judges have "wide discretion in imposing supervised release," *United States v. Crandon*, 173 F.3d 122, 127 (3d Cir. 1999), *cert. denied*, 528 U.S. 855 (1999), any special conditions must be "reasonably related" to the goals of deterrence, protection of the public, and rehabilitation of the defendant, and must "involve[] no greater deprivation of liberty than is reasonably necessary" to meet these goals. 18 U.S.C. § 3583(d)(1),(2). If a condition infringes on a fundamental constitutional right, we will affirm only if the condition is "narrowly tailored and . . . directly related to deterring [the offender] and protecting the public." *Crandon*, 173 F.3d at 128.

A.

---

[2] We use a four-prong analysis to determine whether the district court committed plain error. An appellant must show: (1) an error was committed; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993). "A plainly erroneous condition of supervised release will inevitably affect substantial rights, as a defendant who fails to meet that condition will be subject to further incarceration." *United States v. Pruden*, 398 F.3d 241, 251 (3d Cir. 2005). Moreover, imposing a sentence not authorized by law "seriously affects the fairness, integrity, and reputation of the proceedings." *Id.* Thus, if we find that the District Court plainly erred in imposing this supervised release condition, we must vacate the condition.

Scalise contends that the District Court may not impose a supervised release condition limiting his contact with minors without first making a factual finding that he will pose an actual danger to minors upon his release.

Although "courts of appeals have consistently required district courts to set forth factual findings to justify special probation conditions," *United States v. Warren*, 186 F.3d 358, 366 (3d Cir. 1999), "[w]here a sentencing court fails to adequately explain its reasons for imposing a condition of supervised release or the condition's relationship to the applicable sentencing factors, we may nevertheless affirm the condition if we can 'ascertain any viable basis for the . . . restriction in the record before the District Court . . . on our own.'" *United States v. Voelker*, 489 F.3d 139, 143 (3d Cir. 2007) (quoting *Warren*, 186 F.3d at 367).

Here, the District Court failed to explain its reasons for imposing the special condition limiting Scalise's contact with minors. Nevertheless, we find adequate support for the imposition of this condition in the record. Scalise was convicted of receipt and possession of child pornography. Among the 700 or so images in his collection were a number of depictions of severe child abuse. These facts alone provide a reasoned and adequate basis for the imposition of this condition. *See United States v. Loy*, 237 F.3d 251, 269 (3d Cir. 2001).

B.

Scalise also claims that the condition restricting his contact with all minors upon his release could be read to limit interaction with his future (as yet unborn) children. He

argues that such an overbroad and vague condition might deter him from exercising his constitutional right to procreation, *see Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942), and, should he have children, violate his fundamental right to familial integrity, *see Gruenke v. Seip*, 225 F.3d 290, 303 (3d Cir. 2000).

Recognizing the "severe intrusion" which could result from such an expansive reading of this condition, we held in *Loy* that "absent a clearer sign from the District Court, the condition should be construed to apply only to other people's children."[3] 237 F.3d at 251, 270. Unlike in *Voelker*, where we found that the record supported a construction of the condition restricting Voelker's interactions with his own children, here, nothing in the record supports such a finding. 489 F.3d at 154 (where the defendant "jeopardized his minor daughter's welfare by offering her for sex during an online communication"). Indeed, as the Government concedes, the restriction here must be interpreted to extend only to minors other than Scalise's children. *See also United States v. Miller*, 594 F.3d 172, 190-91 (3d Cir. 2010) (holding that a condition limiting Miller's contacts with "children under the age of 18 except for family members or children in the presence of an adult who has been approved by the probation officer . . . appears to accord with our precedent, address *Miller's* overbreadth concerns, and satisfy the Government.").

---

[3] Although we held in *Loy* that we will construe "no minors" conditions narrowly to avoid any constitutional difficulty, we encourage sentencing courts to state specifically whether such a condition will apply to a defendant's children or other members of his family.

C.

Finally, Scalise argues the District Court improperly delegated judicial authority to the probation officer by limiting his contact with minors except under the supervision of persons approved in advance by the probation officer.

"Probation officers have broad statutory authority to advise and supervise probationers, and to 'perform any other duty that the court may designate.'" *United States v. Pruden*, 398 F.3d 241, 250 (3d Cir. 2005) (citing 18 U.S.C. § 3603(10)). However, because probation officers are nonjudicial officers, they may not "decide the nature or extent of the punishment imposed upon a probationer." *Id*. In balancing the "need for flexibility with the constitutional requirement that judges, not probation officers, set the terms of a sentence," we distinguish between judicial and administrative authority as follows:

> If [the defendant] is required to participate in a mental health intervention only if directed to do so by his probation officer, then this special condition constitutes an impermissible delegation of judicial authority to the probation officer. On the other hand, if the District Court was intending nothing more than to delegate to the probation officer the details with respect to the selection and schedule of the program, such delegation was proper.

*Id.* (quoting *United States v. Peterson*, 248 F.3d 79, 85 (2d Cir. 2001)).

In *United States v. Heckman*, 592 F.3d 400 (3d Cir. 2010), we vacated a condition of supervised release which required the defendant to "follow the directions of the United States Probation Office regarding any contact with children of either sex under the age of 18." *Id.* at 411. Finding that this condition delegated complete discretion over

11

Heckman's contact with minors to the Probation Office, we held that the sentencing court impermissibly abdicated its responsibility to set the conditions of his release. Unlike the judicial power which was delegated in *Heckman*, the power to select a responsible individual to facilitate and supervise a defendant's interactions with minors is administrative, more akin to selecting a defendant's mental health program than directing participation in one.

We recognize, however, that in *Voelker*, we vacated as an "unbridled delegation of authority" a condition similar to the one at issue here. 489 F.3d at 154. Animating our decision in *Voelker*, however, was a concern that Voelker's probation officer would hold the "sole authority for deciding if [he] will ever have unsupervised contact with any minor, including his own children, for the rest of his life." *Id.* Whereas Voelker's condition threatened his lifelong relationship with his children, Scalise's condition has a more limited reach. The Government here concedes that Scalise's condition will lift within ten years of his release and will have no effect on his interactions with his own children. *See* 489 F.3d at 154. Thus, Scalise's liberty interest in associating freely with minors will not be unduly burdened by the condition.[4]

For the reasons set forth above, we will affirm the judgment of the District Court.

---

[4] We remain cognizant, however, of *Voelker*'s underlying concerns regarding the potential for probation officers to abuse their discretion. Indeed, we see little practical difference between a probation officer who flatly prohibits any contact with minors and one who refuses to authorize a "responsible" adult to supervise interactions. However, if upon his release, Scalise confronts this type of abuse, he remains able to petition the District Court to amend his conditions of supervised release.