# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 13, 2011

Lyle W. Cayce
Clerk

No. 10-50500

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

AUBREY RUFFIN MILLER,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas

Before DAVIS, PRADO, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Aubrey Miller pled guilty to one count of transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1). The district court sentenced Miller to 220 months of imprisonment (18 years and 4 months), a term within the advisory Guidelines range and less than the statutory maximum of 240 months of imprisonment. The district court also imposed a twenty-five-year term of supervised release. Miller appeals his sentence and elements of his supervised release. We affirm.

No. 10-50500

**I**

A grand jury indicted Miller on three counts. He ultimately pled guilty to Count One of the indictment: the knowing transportation or shipment of child pornography in violation of 18 U.S.C. § 2252(a)(1). The indictment described some of the materials found in Miller's possession. One example, among many, was a "video file depicting a nude minor female being anally raped by a nude adult male while a nude adult female holds the minor female in place." As part of his plea, Miller affirmed that the descriptions of child pornography set forth in the indictment were accurate.

For the purposes of Miller's Sentencing Guidelines calculation, he was attributed with possession of 495 images—45 still photos and 6 videos that were deemed under the Guidelines to contain 75 images each. Miller's offense level was determined to be 36 with a criminal history category of I, leading to an advisory Guidelines range of 188 to 235 months of imprisonment. Miller does not dispute the calculation of the Guidelines range.

Many of the facts relevant to this appeal are drawn from the presentence investigation report. Miller did not object to that report, nor does he contest the accuracy of its factual content on appeal. The report reflects that an investigation of an online service that provided child pornography to its paid subscribers led federal and local law enforcement to Miller. Investigators discovered the child pornography for which Miller has been convicted of transporting or shipping. Images were recovered both from his computer and from his cellular phone. When confronted, Miller told investigators that he had viewed child pornography, which he defined as "like adult, but using children as sex slaves."

The investigation revealed other attempts by Miller to acquire child pornography. Forensic investigators discovered Google searches on Miller's computer that included search terms such as "illegal child porn" and searches

2

No. 10-50500

for six-year-old girls engaged in sexual activity. Miller admitted to investigators that he engaged in online "chats" with individuals he believed to be underage girls. Miller indicated to an investigator that a photo of one such girl, "Molly," could be found on his computer and that his computer password was "pedophile." In a "chat" with "Molly" recovered by forensic investigators, "Molly" indicated that she had previously sent Miller photos of herself at his request. When "Molly" asked which photo Miller preferred, he responded "'all an the naked ones [sic].'"

The investigation revealed that Miller attempted to trade child pornography he possessed for child pornography possessed by others. He sent one such request by email, with the subject line "I Love being a PEDOPHILE," in which Miller requested movies in exchange for six videos that he sent. Miller also admitted to using a web camera to communicate with a juvenile female on two occasions.

Miller admitted to investigators that he had previously been investigated for possession of child pornography while he served in the United States Navy. Miller admitted that his military career ended because he had used military computers to search for child pornography and to "chat" with underage females. While a member of the Navy, he had memberships to two commercial child pornography websites. He had acknowledged to Navy investigators that he used government computers to search and download adult and child pornography.

The investigation that led to the present conviction also revealed that a complaint had been filed with the National Center for Exploited Children indicating that an email address on Miller's computer had been used to solicit nude photographs from an individual posing online as a fourteen-year-old girl. In the messages, the emailer stated to the girl that he had previously engaged in sexual conduct with his eight-year-old niece. Miller notes on appeal that he has no nieces, and therefore contends that this "likely was a fantasy."

3

No. 10-50500

Letters were also recovered in connection with the naval investigation. One of those letters led law enforcement to a girl who indicated that she had communicated with Miller when she was fourteen years old and that he was aware of her age. Miller asked her to send him a nude photo of her masturbating. Notes from the naval investigation also indicate that Miller interacted with a fourteen-year-old girl who said that Miller had requested nude photos, solicited her to meet in person, and told her that he enjoyed having sex with younger girls. Miller informed naval investigators that he was aroused looking at girls between the ages of ten and fifteen, and expressed a fear to the investigators that if not stopped he would become a "sexual predator" or a "child rapist." Miller received an Other Than Honorable Discharge from the Navy as a result of the investigation, though criminal charges were dismissed for a violation of the Speedy Trial Act.

The presentence investigation report suggests that Miller had a difficult childhood and had issues as an adult. With regard to his childhood, Miller stated that his mother suffers from bi-polar disorder, and Miller's mother believed that he may have been sexually abused as a child. With regard to Miller's potential to harm others, Miller's mother indicated that she believes Miller has anger issues and that he has been violent in the past, sentiments echoed by his aunt who stated that Miller often has serious and destructive outbursts. Both indicated that they believe Miller is a threat to others, especially children.

The presentence investigation report indicates that Miller viewed adult pornography before he commenced viewing child pornography. That report also reflects that Miller frequently accessed phone sex providers, in some cases amassing charges in excess of $100 per call.

Miller told the court at sentencing that while he was incarcerated awaiting sentencing, he had been raped. He asserted that this experience had helped him

No. 10-50500

to empathize with the victims of child pornography and that now, the thought of viewing child pornography made him feel "sick to think of being a spectator" of such images.

Miller asked the district court to impose a sentence below the advisory Guidelines sentencing range of 188 to 235 months of imprisonment. The district court rejected that request and chose a sentence of 220 months, which Miller challenges as unreasonable. The district court also imposed a twenty-five-year term of supervised release, with conditions that included restrictions on possession of sexually stimulating materials, computer and Internet use, and use of photographic equipment and devices.

Miller appeals, contending his prison sentence is longer than necessary to satisfy the sentencing goals set forth in 18 U.S.C. § 3553(a) and that certain restrictions imposed as part of his supervised release should be vacated. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## II

Miller contends that his sentence of 220 months of imprisonment is substantively unreasonable. He voiced this objection in the district court, and we therefore review for an abuse of discretion.[1] Our "review is highly deferential as the sentencing judge is in a superior position to find facts and judge their import under [18 U.S.C.] § 3553(a) with respect to a particular defendant."[2]

Congress has directed that in selecting a sentence, a district "court shall impose a sentence sufficient, but not greater than necessary, to comply with the

---

[1] *United States v. Key*, 599 F.3d 469, 473 (5th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)), *cert. denied*, 131 S. Ct. 997 (2011).

[2] *United States v. Campos-Maldonado*, 531 F.3d 337, 339 (5th Cir. 2008) (citing *Gall*, 552 U.S. at 51).

No. 10-50500

purposes set forth in paragraph (2)" of 18 U.S.C. § 3553(a).[3]  Sentencing courts are further directed to consider "the nature and circumstances of the offense and the history and characteristics of the defendant."[4]

The arguments in support of Miller's contention that the length of his sentence is substantively unreasonable are multi-faceted.  He first asserts that because the Sentencing Guidelines applicable to child pornography offenses are not based on empirical sentencing data, they are seriously flawed and can lead to unreasonable and disproportionate prison sentences.  Miller acknowledges that our court has held that there is a rebuttable presumption that a sentence within the applicable advisory Guidelines range is reasonable, even if the applicable Guideline is not empirically based.[5]  Rebutting this presumption requires a "showing that the sentence does not account for a factor that should

---

[3] 18 U.S.C. § 3553(a).  Those purposes are:

(2)  the need for the sentence imposed--

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

*Id.* § 3553(a)(2).

[4] *Id.* § 3553(a)(1).

[5] *See United States v. Duarte*, 569 F.3d 528, 529 (5th Cir. 2009) (noting that "numerous panels of this court have faced and rejected arguments" that the presumption of reasonableness should be removed as to "non-empirically-grounded provisions of the Guidelines"); *United States v. Mondragon-Santiago*, 564 F.3d 357, 366-67 (5th Cir. 2009) (holding that, even when a Guideline is not empirically based, "we will presume a sentence within the current version of the Guidelines to be reasonable, and the defendant must rebut that presumption to demonstrate substantive unreasonableness").

No. 10-50500

receive significant weight, [the sentence] gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors."[6] Miller cites *United States v. Dorvee*, a decision of the Second Circuit, which does not apply such a presumption.[7]

The defendant in *Dorvee* was convicted of distributing child pornography in violation of 18 U.S.C. § 2252(a)(2)(A), and sentenced to 240 months of imprisonment, less 194 days served for a related state offense.[8] In concluding that this sentence was substantively unreasonable, the Second Circuit explained that it was "troubled by the district court's apparent assumption that Dorvee was likely to actually sexually assault a child, a view unsupported by the record evidence," noting that there was "expert record evidence" contrary to this assumption.[9]

As a factual matter, the present case is distinguishable from *Dorvee*. Miller admitted three years before he was indicted for transporting child pornography that he was sexually aroused by girls between the ages of 10 and 15. Miller told officers investigating the child pornography offense that if he was not "stopped," he feared that he would become a sexual predator or child rapist, a fact that the district court expressly noted in the course of arriving at the sentence imposed.

But these factual differences do not address the core of Miller's argument regarding the lack of an empirical basis for the child pornography sentencing

---

[6] *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009) (citing *United States v. Nikonova*, 480 F.3d 371, 376 (5th Cir. 2007)).

[7] 616 F.3d 174, 183 (2d Cir. 2010) ("Dorvee's sentence was a within-Guidelines sentence. However, we do not presume that such sentences are reasonable when we review them substantively.") (citing *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006)).

[8] *Id*. at 176.

[9] *Id*. at 183.

7

Guidelines or the Second Circuit's assessment of those Guidelines as "irrational[]."[10] The Second Circuit discussed at considerable length in *Dorvee* the history of the sentencing Guidelines that apply to child pornography offenses and the role of Congress in that history.[11] The Second Circuit surveyed writings that have expressed disapproval of these Guidelines and congressional actions regarding them.[12] That court was highly critical of the child pornography Guidelines, concluding that "[a]n ordinary first-time offender is therefore likely to qualify for a sentence of at least 168 to 210 months, rapidly approaching the statutory maximum, based solely on sentencing enhancements that are all but inherent to the crime of conviction."[13] The Second Circuit asserted that "adherence to the Guidelines results in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders who, for example, distribute child pornography for pecuniary gain and who fall in higher criminal history categories."[14] That court declared, "[t]his result is fundamentally incompatible with § 3553(a)."[15] The Second Circuit also concluded that if Dorvee had "actually engaged in sexual conduct with a minor, his applicable Guidelines range could have been considerably lower," and compared a hypothetical Guidelines range of 151 to 188 months of imprisonment for an offense involving actual sexual contact with a child to Dorvee's within-Guidelines sentence of 233 months of imprisonment for distributing child

---

[10] *Id.* at 187 ("The irrationality in § 2G2.2 is easily illustrated by two examples.").

[11] *Id.* at 184-186.

[12] *Id.*

[13] *Id.* at 186.

[14] *Id.* at 187.

[15] *Id.*

pornography.[16] The Second Circuit then held that "it would be manifestly unjust to let Dorvee's sentence stand," and "conclude[d] that Dorvee's sentence was substantively unreasonable . . . ."[17]

With great respect, we do not agree with our sister court's reasoning. Our circuit has not followed the course that the Second Circuit has charted with respect to sentencing Guidelines that are not based on empirical data.[18] Empirically based or not, the Guidelines remain the Guidelines. It is for the Commission to alter or amend them.[19] The Supreme Court made clear in *Kimbrough v. United States* that "[a] district judge must include the Guidelines range in the array of factors warranting consideration,"[20] even if the Commission did not use an empirical approach in developing sentences for the particular offense.[21] Accordingly, we will not reject a Guidelines provision as "unreasonable" or "irrational" simply because it is not based on empirical data and even if it leads to some disparities in sentencing. The advisory Guidelines sentencing range remains a factor for district courts to consider in arriving upon a sentence.[22]

However, our circuit has emphasized that we do not blindly approve a within-Guidelines sentence, even though it carries a rebuttable presumption of reasonableness. We continue to review a sentence that is within the applicable

---

[16] *Id.*

[17] *Id.* at 188.

[18] *See United States v. Duarte*, 569 F.3d 528, 529 (5th Cir. 2009); *United States v. Mondragon-Santiago*, 564 F.3d 357, 367 (5th Cir. 2009).

[19] *See Mondragon-Santiago*, 564 F.3d at 367.

[20] 552 U.S. 85, 91 (2007).

[21] *See id.* at 96.

[22] *Id.* at 91.

No. 10-50500

Guidelines range for reasonableness based on the statutory factors and considerations as applied to the record in a particular case, with due deference to the district court's assessment and weighing of these considerations in light of the particular defendant and specific facts before the sentencing court.[23]

In the present case, the district court expressly considered and rejected reasoning similar to that in *Dorvee* to the effect that those who "merely" possess or transport child pornography should not receive the same or more severe sentences than those who have actual sexual contact with a child. The district court explained at Miller's sentencing hearing:

> I will address one factor that I think should not be lost here, but that often gets lost - - gets lost when we get into scholarly discussions or reviewing scholarly reports on the guidelines, and that is the argument that this defendant would not have as high of a guideline range if he had had a physical encounter with an underage person. The difference between that in this court's opinion and what is presented in a case like this is that we have numerous victims in a case like this, not one victim. Every image of a child, every image of a nonadult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of people - - children who are forced into these roles.
>
> So although I do not take issue with the writing about what has happened to the guidelines, I think it begs the question of what is at stake here in the statutory sentencing scheme and the fact that this conduct is illegal and the concern that the Congress of the United States and the courts of this nation and the public of this nation place on it, and that is, every image has a child who has been

---

[23] *See United States v. Murray*, 648 F.3d 251, 257-58 (5th Cir. 2011); *United States v. Duarte*, 569 F.3d 528, 530-31 (5th Cir. 2009); *Unites States v. Lemus-Gonzalez*, 563 F.3d 88, 94-95 (5th Cir. 2009).

No. 10-50500

exploited and abused, and that is the concern I have.  It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

The district court considered the policies underpinning the child pornography Guidelines.  It concluded that the sentence imposed, 220 months of imprisonment, was not greater than necessary to accomplish the purposes set forth in 18 U.S.C. § 3553.  The district court made clear that the Guidelines advisory range was but one factor in its selection of a sentence.  In fact, the district court stated at the sentencing hearing, after a lengthy analysis of Miller's conduct and history, that "although I am going to render a sentence that is within the guideline range, it is within the guideline range solely by happenstance."

Miller attempts to persuade us that his sentence is unreasonable by pointing to statistics collected by the Sentencing Commission in the 2009 SOURCEBOOK OF FEDERAL SENTENCING STATISTICS.  He argues that "district courts in over 600 cases concluded that the advisory guideline range for child pornography offenses was greater than necessary to meet §3553(a)'s sentencing goals."  The table of information to which Miller refers reflects that there were 609 sentences below the Guidelines range out of 1,606 sentences (approximately 38%).[24]  The same table reflects that 717 of these 1,606 sentences were within the Guidelines range (approximately 45%).[25]  But appellate courts are not tasked with applying statistical analyses to assess the reasonableness of a particular

---

[24] U.S. SENTENCING COMM'N, 2009 SOURCEBOOK OF FEDERAL SENTENCING STATISTICS 78-81 tbl. 28 (FY 2009).

[25] *Id.*

11

No. 10-50500

sentence in a particular case.[26]  Nor are district courts.[27]  While sentences imposed by other courts may be a consideration for a district court, such information does not set a median, floor, or ceiling.  The Supreme Court has explained how district courts are to select a sentence, within the parameters given by Congress in § 3553, and appellate courts are to review that determination for reasonableness.[28]  The sentence the district court imposed upon Miller was not rendered unreasonable by the statistics on which Miller relies.

Once again attacking the policies and rationale that underpin the Guidelines, Miller next argues that his offense was "typical" and "[y]et, his offense level was extremely high, in part because the child pornography guideline provides offense level enhancements, 'some quite extreme,' that are based on 'circumstances that appear in nearly every child pornography case.'"[29] Miller assails enhancements that increase the offense level: for use of the Internet,[30] based on the number of images,[31] if the pornographic material involved a prepubescent minor who had not attained the age of 12 years,[32] if the material portrays sadistic or masochistic conduct or other depictions of

---

[26] *See Duarte*, 569 F.3d at 530.

[27] *Id.*

[28] *See Gall v. United States*, 552 U.S. 38, 49-51 (2007).

[29] Miller quotes *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1105 (N.D. Iowa 2009).

[30] U.S. SENTENCING GUIDE MANUAL § 2G2.2(b)(6) (2009).

[31] *Id.* § 2G2.2(b)(7).

[32] *Id.* § 2G2.2(b)(2).

12

violence,[33] and for distributing material in exchange for other images.[34] He also takes issue with the Guidelines directive that each video or movie is considered to contain 75 images.[35] Each of these Guideline provisions applied in Miller's case and increased his advisory sentencing range. He does not contend that the enhancements and image calculations should not have been applied but rather that since many of these enhancements are applied in a large percentage of cases involving child pornography, sentences are "'illogically skew[ed],'" he asserts, "'for even average defendants.'"[36]

We disagree for reasons that include those discussed above. The Guidelines remain the Guidelines, and district courts must take them into account. But we also disagree that it is "illogical" to differentiate between defendants who view or distribute images of prepubescent children being raped and sodomized, as one example under the Guidelines, and those defendants who view or distribute pornography that depicts minors who are not prepubescent engaged in sexual activity that is not violent or sadistic. We reject the view that because there are many defendants who view images of children under the age of 12 being raped and sodomized, and because there are many defendants who obtain hundreds of pornographic images of children, the terms of imprisonment should be reduced for all who receive or transport child pornography, regardless of the content of those images and regardless of the number of the images. The Guidelines treat differing behavior differently, and in our view, that differentiation is not unreasonable.

---

[33] *Id.* § 2G2.2(b)(4).

[34] *Id.* § 2G2.2(b)(3)(B) or (F).

[35] *Id.* § 2G2.2, Commentary n.4(B)(ii).

[36] Miller quotes *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1105 (N.D. Iowa 2009).

No. 10-50500

The district court in this case was cognizant of the undeniable fact that real children are actually being abused and violated when pornographic images are made. Without a market for such images, and without a strong appetite for more and more images exhibited by Miller and similarly situated defendants, there would be far fewer children who are injured and criminally assaulted in this way. If a handful of pornographic images taken twenty years ago were sufficient to satisfy the perverse desires of those who possess and traffic in child pornography, we would not have the huge industry that exists internationally today. No other child would be raped or sodomized or otherwise violated to produce pornographic images. Tragically, the reality is that there is a huge demand for "fresh" faces and images.

There is a rational basis for enhancing punishment based not only on the number of images amassed but also on the degree of abuse or molestation of children that the images depict. All acts depicted in child pornography are despicable, but that does not mean that punishment for possessing or transporting child pornography should be uniform, irrespective of the acts depicted. Some defendants traffic in images of children that are pornographic but not violent or sadistic. Other defendants seek out depictions that are violent and sadistic. The enhancements applicable under the Guidelines do not unreasonably impose increases in offense levels for each of the categories identified by Miller. A sentence is not unreasonable simply because it applied these enhancements to arrive upon the properly calculated advisory Guidelines range.

Miller contends that punishment for his offense should have been mitigated by his personal characteristics and history, including his difficult childhood, his service in the Navy (prior to his other-than-honorable discharge), and the empathy for child pornography victims and remorse he attained after he was raped in prison. The district court considered each of these factors. Miller's

14

No. 10-50500

disagreement is with the weight that the court gave to each. The district court did not fail to give sufficient weight to Miller's characteristics and history.

We have included in the margin the reasons, in their entirety, that the district court gave for selecting a sentence of 220 months of imprisonment.[37]

---

[37] The district court stated at sentencing:

I don't have a real concern about the guidelines in this case. I look at the facts of this case and I see that the statutory range of punishment is 5 to 20 years. The guidelines are the guidelines and since *Kimbrough* and *Gall*, beginning with *Booker*, the guidelines are but one factor that this Court must consider in Title 18 of United States Code, Section 3553, to determine a sentence that is sufficient but not greater than necessary to comply with all of the factors set forth in 3553, one of which is the guidelines.

As I have stated, the correct guideline range in my opinion is as computed by the Probation Department, which is 188 to 235 months. The statutory range is 60 months to 240 months, as I have said. It is with that that I start in this case, this particular case, trying to determine what the appropriate sentence would be.

I will address one factor that I think should not be lost here, but that often gets lost - - gets lost when we get into scholarly discussions or reviewing scholarly reports on the guidelines, and that is the argument that this defendant would not have as high of a guideline range if he had had a physical encounter with an underage person. The difference between that in this court's opinion and what is presented in a case like this is that we have numerous victims in a case like this, not one victim. Every image of a child, every image of a nonadult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of people - - children who are forced into these roles.

So although I do not take issue with the writing about what has happened to the guidelines, I think it begs the question of what is at stake here in the statutory sentencing scheme and the fact that this conduct is illegal and the concern that the Congress of the United States and the courts of this nation and the public of this nation place on it, and that is, every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

15

In distilling a little bit from the presentence investigation report, which is lengthy and I think was very thorough here, let me tell you what impacts me in determining what a sentence that is sufficient but not greater than necessary to comply with the purposes of Title 18, Section 3553, might be. Mr. Miller is a 31-year-old male who has pleaded guilty in this case. He paid for access to pay for - - to pay for access to a child pornography Website known as CPT. As a member, he purchased membership packages where he could view and download images that contained minors. They included prepubescents engaged in sexually explicit conduct.

At the time of his arrest, Miller admitted to the agents that he was in possession of an Acer laptop computer that he used to download child pornography. Subsequent forensic exams confirmed that the computer's hard drive contained six videos and 37 pictures which depicted child pornography, including prepubescents engaged in sexually explicit conduct. I don't know how many minors were being abused totally in those pictures. The material portrayed multiple images that depicted sadistic conduct. An examination also confirmed that Miller had conducted Google searches using terms like "illegal child porn, underage girls naked and masturbating six-year-old girls."

Using his personal email account, he sent an email that contained an attachment to an individual known as 1Garth@live.co.UK. Located in the attachment were the same videos that were located during the forensic examination that contained child pornography. Now, that may not seem like much, but when you exchange these things, when you get involved in a network with these things, it leads to the producers of these type of videos wanting more and more and different productions to sell to people who have subscribed to this group and to allow them to exchange and more children become abused that way.

Additionally, after Miller's arrest, the case agents in this case was [sic] given the defendant's cellular telephone that contained additional images of child pornography, including bondage. A review of all of these images confirmed that they contained multiple prepubescent females, many under age 5, engaged in sexual conduct with adults, males and females.

Further examination on his computer reviewed [sic] chat logs where he engaged in sexually explicit chats with others to include what he presumed to be an underage female. During his chat, knowing it was sexually explicit, he requested that the female provide him with additional naked pictures of herself. In another chat, Miller attempted to barter child pornography images with another by sending the same six videos.

At the time of his arrest, Miller admitted to being in possession of child pornography. He also admitted that he had used his work computer while in the Navy and the computer - - and he accessed child pornography. During the

16

presentence interview, he admitted to being in possession as well as transporting child pornography to individuals he met at online chatrooms.

Although his offense level was reduced by three levels for accepting responsibility, and I have accepted that, so Mr. Ibbotson, you need not worry about what you provided with the Court with regard to the guidelines as affecting his acceptance of responsibility, I have no doubt he has accepted responsibility. But I have many concerns regarding him, Mr. Miller, and his risk around the community. He has a prior history of approaching and engaging young females, as well as an obsession for making phone sex calls and viewing pornography, including child pornography, to the point that it's interfered with his employment.

In 2007, he established to maintain contact with a 14-year-old female in Lometa, Texas. During their conversation, he was often sexually explicit and once asked the female to travel to meet him in person.

Also a concern is the fact that Mr. Miller, in my opinion, demonstrates how a social behavior and how a social attitude since, according to Dr. Tucker with Austin Neuropsychology, has a history of assaultive and threatening behavior.

According to family members, Miller has displayed serious and destructive outbursts. By his own admission, 2007, Miller sexually aroused a girl between the ages of 10 and 15 and indicated that if not stopped he would become a sexual predator or a child rapist. These things are disturbing to this Court.

During the presentence interview, however, and his admission statement, Miller refers to himself as a spectator of child pornography, indicating that he's no longer sexually aroused or interested in doing child pornography.

The statement, though, is not only offering superficial recognition of his what I consider deviant sexual interest, but he is denying his interest and fantasies, and I have questions whether treatment would produce anything in the near term.

That is what I consider when I look at the full range of statutory punishment. And although I am going to render a sentence that is within the guideline range, it is within the guideline range solely by happenstance. I will render a sentence that I believe is justified under Title 18 of United States Code, Section 3553, it is a sentence that is sufficient but not greater than necessary to comply with the purposes of that statute and is a sentence which for the reasons that I have just stated takes into account all of the facts and circumstances of this defendant's background and the crime for which he has

No. 10-50500

The district court did not fail to account for a factor that should have received significant weight, and the sentence does not represent a clear error of judgment in balancing sentencing factors.

Even were Miller's sentence outside the properly calculated advisory Guidelines range, which it is not, we must give due deference to the discretion sentencing courts possess following the Supreme Court's decision in *Gall v. United States*.[38]  In *United States v. Rowan*, the defendant was convicted of possession of child pornography, and the applicable Guidelines range was 46-57 months of imprisonment.[39]  The district court sentenced the defendant to 60 months of probation.[40]  We affirmed, noting that the district court "meticulously considered the § 3553(a) factors."[41]

In the present case, the district court considered the statutory factors, and the sentence imposed was not unreasonable.

### III

The district court imposed certain conditions that are to apply during the twenty-five-year term of supervised release that is to commence when Miller is released from prison.  One of these pertains to computer and Internet access:

> [The defendant] shall not use any computer at any location, whether or not at [his] place of employment, residence, or elsewhere, without the prior written permission of the probation officer.  [The

---

been convicted and further takes into account all of the Title 18, Section 3553 factors.

Whether it is a guideline sentence or whether it is an equitable sentence under Title 18 of United States Code, Section 3553, it is what I believe to be a sentence that is sufficient but not greater than necessary to impose in this case.

[38] 552 U.S. 38, 51 (2007).

[39] 530 F.3d 379, 380 (5th Cir. 2008).

[40] *Id.*

[41] *Id.* at 381.

No. 10-50500

defendant] shall not possess or use any phone or any other electronic device that allows access to the internet without prior written permission from [the] probation officer.

Miller objected to this restriction at the time he was sentenced on the basis that it did not reasonably relate to the statutory criteria set forth in 18 U.S.C. §§ 3553(a) or 3583, and was a greater restriction on his liberty than necessary. He carries these complaints forward on appeal, and we apply an abuse of discretion standard of review.[42]

Pursuant to 18 U.S.C. § 3583, supervised release for a violation of 18 U.S.C. § 2252—to which Miller pled guilty—is authorized to be "any term of years not less than 5, or life."[43] We have explained that § 3583 and § 3553 require that supervised release conditions be "reasonably related" to "(1) the nature and characteristics of the offense and the history and characteristics of the defendant, (2) the deterrence of criminal conduct, (3) the protection of the public from further crimes of the defendant, and (4) the provision of needed educational or vocational training, medical care, or other correctional treatment to the defendant."[44] A condition of supervised release must be related to "'any'" of these factors, "'not necessarily all of them.'"[45] The condition "cannot impose any 'greater deprivation of liberty than is reasonably necessary.'"[46] The condition should take into consideration the policy statements issued by the Sentencing Commission. The Guidelines state that for a "sex offense" such as

---

[42] *United States v. Paul*, 274 F.3d 155, 165 (5th Cir. 2001).

[43] 18 U.S.C. § 3583(k).

[44] *United States v. Weatherton*, 567 F.3d 149, 153 (5th Cir. 2009) (citations omitted).

[45] *Id.* at 153 n.1 (citation omitted).

[46] *Id.* at 153 (citations omitted).

19

No. 10-50500

that committed by Miller, the term "may be up to life."[47]  The Guidelines also include the following "Policy Statement": "If the instant offense of conviction is a sex offense, however, the statutory maximum term of supervised release is recommended."[48]

Miller concedes that some restrictions on his use of a computer or the Internet "may have been appropriate." He asserts, however, that the restrictions imposed went beyond merely "limiting" the use of a computer by sex offenders, as recommended by a policy statement in the Guidelines,[49] and that the restrictions amount to a 25-year ban on all computer and Internet use.  We disagree.  The ban is not absolute or unconditional, as were the bans in *United States v. Voelker*[50] and *United States v. Heckman*,[51] two opinions of the Third

---

[47] U.S. SENTENCING GUIDE MANUAL § 5D1.2(b) (2009).

[48] *Id.* (the definitions in application note 1 define a "sex offense" as including an offense against a minor under Title 18, Chapter 110—which includes the instant provision, 18 U.S.C. § 2252).

[49] U.S. SENTENCING GUIDE MANUAL § 5D1.3(d)(7)(B):

(d)    (Policy Statement) The following "special" conditions of supervised release are recommended in the circumstances described and, in addition, may otherwise be appropriate in particular cases: . . .

(7)    Sex Offenses

If the instant offense of conviction is a sex offense, as defined in Application Note 1 of the Commentary to § 5D1.2 (Term of Supervised Release)– . . .

(B)    A condition limiting the use of a computer or an interactive computer service in cases in which the defendant used such items.

[50] 489 F.3d 139, 143 (3d Cir. 2007).

[51] 592 F.3d 400, 403 (3d Cir. 2010).

No. 10-50500

Circuit cited by Miller. Miller's probation officer may grant permission to use a computer and to access the Internet.[52]

Miller relies heavily on decisions from other circuits in arguing that we should vacate the restrictions placed on computer and Internet access as overly broad and unduly restrictive. Again citing *Voelker*[53] and relying upon the District of Columbia Circuit's decision in *United States v. Russell*,[54] Miller contends that "'[c]omputers and internet access have become virtually indispensable in the modern world,'"[55] and that "employment today often requires access to computers, just as work '100 years ago would almost invariably have required the use of pens and pencils.'"[56] He contends that the restrictions imposed by the district court undermine the sentencing goal of

---

[52] *See, e.g.*, *United States v. Boston*, 494 F.3d 660, 668 (8th Cir. 2007) (concluding that a prohibition from accessing or possessing a computer at home or elsewhere without the prior written approval of a probation officer "was not absolute"); *United States v. Alvarez*, 478 F.3d 864, 868 (8th Cir. 2007) ("[T]he special condition does not completely prohibit Alvarez's use of the Internet; should he present sufficient justification and secure his probation officer's consent, the terms of the special condition allow him access to the Internet outside of his residence"); *United States v. Fields*, 324 F.3d 1025, 1027 (8th Cir. 2003) (examining a similar prohibition and concluding that the defendant "may use and even possess a computer wtih the permission of is probation officer"); *United States v. Walser*, 275 F.3d 981, 988 (10th Cir. 2001) (concluding that the defendant was "not completely banned from using the Internet. Rather, he must obtain prior permission from the probation office," but also noting "the vagueness of the special condition leaves open the possibility that the probation office might unreasonably prevent [the defendant] from accessing one of the central means of information-gathering and communication in our culture today," while concluding that this vagueness did not constitute plain error).

[53] 489 F.3d 139, 148 (3d Cir. 2007).

[54] 600 F.3d 631, 637 (D.C. Cir. 2010) (quoting *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001)).

[55] *Voelker*, 489 F.3d at 148 n.8.

[56] *Russell*, 600 F.3d at 637.

rehabilitation by severely limiting his future employment prospects, again citing *Russell*.[57]

Quoting *Voelker*, Miller argues that the Internet restrictions unduly burden his liberty interests because computers and other devices that access the Internet are "'an important medium of communication, commerce, and information-gathering.'"[58] Citing the District of Columbia Circuit's decision in *United States v. Love*,[59] he asserts that the restrictions deprive him "of the easiest way to pay his bills, check the weather, stay on top of world events, and keep in touch with friends."[60] In *Voelker*, the ban that was vacated was a lifetime restriction that applied not only to Internet usage but to computer equipment as well and did not permit a probation officer to allow any access, at all, to either.[61] In *Love*, the court of appeals *upheld* a restriction on Internet access similar to the restriction the district court imposed on Miller.[62] The reasoning in these decisions does not compel the conclusion that the restrictions imposed upon Miller are overly broad.

Nevertheless, we acknowledge that there is some tension among various courts of appeals' opinions regarding the reasonableness of restrictions on computer use and Internet access.[63] Dichotomies can be discerned.

---

[57] *Id.* at 636-39.

[58] *Voelker*, 489 F.3d at 148 (quoting *United States v. Crume*, 422 F.3d 728, 733 (8th Cir. 2005)).

[59] 593 F.3d 1 (D.C. Cir. 2010).

[60] *Id.* at 12.

[61] *Voelker*, 489 F.3d at 143.

[62] *Love*, 593 F.3d at 11-13.

[63] *See United States v. Sullivan*, 451 F.3d 884, 895 (D.C. Cir. 2006) (observing "[t]his circuit has yet to decide whether individuals convicted of sex crimes may have their Internet usage conditioned on Probation Office approval, and our sister circuits are divided on the

No. 10-50500

With regard to absolute bans (those that do not permit a probation officer to allow exceptions), the Seventh Circuit vacated a condition that prohibited the possession or use of a computer equipped with Internet capability,[64] although that court noted that such a ban might be appropriate if there were "at least some evidence of the defendant's own outbound use of the Internet to initiate and facilitate victimization of children."[65]  Our court upheld an absolute, three-year ban on possessing or having access to a computer or the Internet in *United States v. Paul*,[66] which we will discuss in more detail below.  This court also affirmed a revocation of supervised release for violation of a similar three-year prohibition in *United States v. Brigham*.[67]

Even when a condition of release is not absolute and provides that the Probation Office may grant permission to a defendant to access the Internet, some courts have held that if the defendant was convicted "merely" of possessing or receiving child pornography, such a condition was a greater deprivation of the defendant's liberty than was reasonably necessary.[68]  However, some of those

---

issue.") (comparing *United States v. Rearden*, 349 F.3d 608, 621 (9th Cir. 2003)*, and United States v. Zinn*, 321 F.3d 1084, 1093 (11th Cir. 2003), *with Crume*, 422 F.3d at 733, *and United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002)).

[64] *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003).

[65] *Id*. at 878.

[66] 274 F.3d 155, 169-70  (5th Cir. 2001).

[67] 569 F.3d 220, 224, 234 (5th Cir. 2009) (affirming a special condition that provided "[t]he defendant shall not possess or utilize a computer or internet connection device during the term of supervised release.").

[68] *Crume*, 422 F.3d at 733 (holding that one consideration in prior  decisions upholding restrictions on Internet access and computer use "was that there was evidence that the defendant used his computer and the Internet to do more than merely possess child pornography" and vacating restrictions that prohibited internet access unless prior written consent from the probation officer was obtained) (citing *United States v. Ristine*, 335 F.3d 692, 696 (8th Cir. 2003), *United States v. Fields*, 324 F.3d 1025, 1027 (8th Cir. 2003)); *see also United States v. Freeman*, 316 F.3d 386, 391-92 (3d Cir. 2003); *United States v. Sofsky*, 287

23

same courts have upheld, or stated that they would uphold, such bans when there was an indication that the defendant might "use the Internet to locate children and lure them to sexual abuse."[69]    Other courts have similarly concluded that, although "an Internet ban subject to Probation Officer approval may in some cases impose a 'greater deprivation of liberty than is reasonably necessary' to deter illegal conduct and protect the public," Internet bans "may be appropriate for those who use the Internet to 'initiate or facilitate the victimization of children'"[70]

Other courts have not required evidence of actual contact with a minor to support the imposition of a prohibition on Internet use as a condition of supervised release.  The Eighth Circuit upheld a prohibition on accessing or possessing a computer unless the defendant obtained the prior written permission of his probation officer as reasonable because the defendant "had used a computer to print out images of child pornography which could easily

---

F.3d 122, 126 (2d Cir. 2002).

[69] *United States v. Johnson*, 446 F.3d 272, 274-75, 281-83 (2d Cir. 2006) (upholding ban similar to Miller's because the defendant was a sophisticated user of computers who had sex with two minors and was on his way to have sex with a third when apprehended and distinguishing *Sofsky*, 287 F.3d 122); *see also United States v. Bender*, 566 F.3d 748, 751-52 (8th Cir. 2009) (upholding restriction on use of a computer and online access without the prior approval of a probation officer because the defendant "arranged on-line to meet a woman for sexual relations, and pursued a sexual relationship despite discovering that she was a minor"); *Crume*, 422 F.3d at 733 (noting that "'[i]n cases where defendants used computers or the internet to commit crimes involving greater exploitation [than possessing child pornography], such restrictions have been upheld'") (quoting *Fields*, 324 F.3d at 1027); *Freeman*, 316 F.3d at 392 ("We are not in any way limiting our ability to so restrict the use of computers when a defendant has a past history of using the internet to contact children.").

[70] *United States v. Love*, 593 F.3d 1, 12 (D.C. Cir. 2010); *see also United States v. Heckman*, 592 F.3d 400, 408 (3d Cir. 2010) (vacating an unconditional lifetime ban on Internet usage, observing that the defendant "has never been convicted of criminal behavior that involved the use of the Internet either to lure a minor into direct sexual activity (such as Crandon) or to entice another to exploit a child directly (such as Thielemann)") (discussing *United States v. Thielemann*, 575 F.3d 265 (3d Cir. 2009), *United States v. Crandon*, 173 F.3d 122 (3d Cir. 1999)).

No. 10-50500

have been done for the purpose of transferring them to others."[71]  The Eleventh Circuit recognized that "the Internet has become an important resource for information, communication, commerce, and other legitimate uses, all of which may be potentially limited to Appellant as a result of our decision."[72]  That court nevertheless affirmed a condition that prohibited Internet access unless permission was obtained from the probation officer, stressing that the defendant had more than 4,000 images of child pornography in his possession, and his counsel had admitted that it was a "'reasonable assumption'" that they came from the Internet.[73]

The Ninth Circuit commented on the divisions among court decisions in *United States v. Rearden*, observing that courts that have upheld prohibitions on Internet usage unless prior permission to access the Internet is given by the Probation Office "reason that there is a 'strong link between child pornography and the Internet, and the need to protect the public, particularly children, from sex offenders,'"[74] "while those [courts] rejecting prohibitions on Internet use are more impressed with the 'virtually indispensable' nature of the Internet in today's world."[75]  In *Rearden*, reviewing for plain error, the Ninth Circuit held that the Internet restriction, similar to Miller's, was reasonably related to his offense of shipping, by means of e-mail transmissions, "quite graphic child pornography," and the restriction was also reasonably related to "the important goal of deterring [the defendant]" and thus "rehabilitation and protecting the

---

[71] *United States v. Boston*, 494 F.3d 660, 668 (8th Cir. 2007).

[72] *United States v. Zinn*, 321 F.3d 1084, 1093 (11th Cir. 2003).

[73] *Id.* at 1093 n.11.

[74] 349 F.3d 608, 621 (9th Cir. 2003) (quoting *Zinn*, 321 F.3d at 1092).

[75] *Id.* (quoting *United States v. Sofsky*, 287 F.3d 122, 126 (2d Cir. 2002)).

public."[76] The *Rearden* decision held that the restriction did not plainly involve a greater than reasonably necessary deprivation of liberty, recognizing that the Probation Office could approve online access.[77]

The decisions of our court have tended to permit sentencing courts to give more weight to the goals of protecting the public and preventing recidivism in balancing those considerations with a defendant's liberty interests when Internet usage was related to the offense for which the defendant was convicted. In *United States v. Paul*, the condition "prohibit[ed] access to both computers and the Internet and it contain[ed] no proviso permitting [the defendant] to use these resources with the approval of his probation office."[78]  In *Paul*, the defendant was convicted of possession of child pornography, but there was evidence that he had "in the past used the Internet to encourage exploitation of children by seeking out fellow 'boy lovers' and providing them with advice on how to find and obtain access to 'young friends.'"[79] We considered decisions from other circuits and expressly "reject[ed] the *White* court's [Tenth Circuit's] implication that an absolute prohibition on accessing computers or the Internet is *per se* an unacceptable condition of supervised release, simply because such a prohibition might prevent a defendant from using a computer at the library to 'get a weather forecast' or to 'read a newspaper online' during the supervised release term."[80]  We concluded that a condition like that imposed on Paul "can be acceptable if it is reasonably necessary to serve the statutory goals outlined

---

[76] *Id.*

[77] *Id.*

[78] 274 F.3d 155, 169 (5th Cir. 2001).

[79] *Id.*

[80] *Id.* at 169-70 (quoting *United States v. White*, 244 F.3d 1199, 1206 (10th Cir. 2001)).

in 18 U.S.C. § 3583(d)."[81]   We observed that "the district court had strong evidentiary support for its determination that a strict ban on computer and Internet use was reasonably necessary" and that the defendant "articulated no specific objections to the computer and Internet ban suggesting how his occupational affairs or his expressive activities will be adversely impacted by the fact that he will be unable to 'use a computer or the Internet at a library, cybercafe or . . . an airport' during the term of his supervised release."[82]

There are at least two factual distinctions between *Paul* and the present case, one that weighs at least slightly in Miller's favor and one that does not. The term of supervised release in *Paul* was three years, while Miller's term is 25 years.  The other difference is that the ban on Internet access in *Paul* was unconditional.  It did not permit the Probation Office to make exceptions. Miller's restriction is not unconditional, as we have discussed above.  There are decisions from other jurisdictions that have drawn a distinction between the comparatively short three-year term of supervised release in *Paul* and much longer bans on Internet access.[83]  There are, however, other decisions that have upheld a ban on Internet access, even one that applied for the duration of the

---

[81] *Id.* at 170.

[82] *Id.*

[83] *See, e.g., United States v. Russell*, 600 F.3d 631, 638 (D.C. Cir. 2010) ("Paul's computer restriction was to last three years, or one tenth of the duration of Russell's [30-year term of supervised release]—a difference that makes Paul's restriction both less burdensome and less likely to become a still poorer fit over time."); *United States v. Heckman*, 592 F.3d 400, 407 n.9 (3d Cir. 2010) ("The Internet bans cited in the Government's brief [including the ban in *Paul*] are each for limited periods of time. . . .  To our knowledge, only the Eighth Circuit Court has upheld a lifetime ban on either Internet or computer access in a precedential opinion.") (citing *United States v. Stults*, 575 F.3d 834 (8th Cir. 2009)).

defendant's life, when the Probation Office had the authority to permit Internet access.[84]

The Court of Appeals for the District of Columbia Circuit has described *Paul* as an "outlier."[85] But in the same opinion, that court discussed at some length the facts in *Paul* that made it "a far stronger case for blanket restriction" than the case then before the D.C. Circuit.[86] Just three months earlier, the D.C. Circuit had cited *Paul* as one among several decisions supporting that court's conclusion that "[c]onsensus is emerging among our sister circuits that Internet bans, while perhaps unreasonably broad for defendants who possess or distribute child pornography, may be appropriate for those who use the Internet to 'initiate or facilitate the victimization of children.'"[87] That court reasoned that "[t]he distinction is grounded in the simple proposition that when a defendant has used the Internet to solicit sex with minors, 'the hazard presented by recidivism' is greater than when the defendant has traded child pornography."[88]

We do not join a "consensus," as described by the D.C. Circuit in *Love*, that may or may not exist when the various writings of various circuit courts are considered.[89] We are not persuaded that a district court should be stripped of

---

[84] *See, e.g.*, *United States v. Love*, 593 F.3d 1, 5, 12 (D.C. Cir. 2010) (affirming lifetime ban); *United States v. Lay*, 583 F.3d 436, 445 (6th Cir. 2009) (affirming ban during 20-year supervised release period); *United States v. Boston*, 494 F.3d 660, 667-68 (8th Cir. 2007) (affirming lifetime ban).

[85] *Russell*, 600 F.3d at 638 ("We have found only one case, [*Paul*], that upholds, against proper challenge, a categorical prohibition on computer possession or use without provision for probation office modification. Not only is *Paul* an outlier, but in key respects it represents a far stronger case for blanket restriction.").

[86] *Id.*

[87] *Love*, 593 F.3d at 12.

[88] *Id.* (quoting *United States v. Johnson*, 446 F.3d 272, 283 (2d Cir. 2006)).

[89] *Id.*

authority to limit Internet access when there is no evidence of solicitation of sex with minors. We instead recognize that district courts have broad discretion in establishing conditions for supervised release. The sentencing judge has the opportunity to consider not only a defendant's past behavior but his demeanor and credibility. The district court in the present case did not abuse its discretion in imposing the prohibitions on computer and Internet access in light of the record before it. We will not recount all the facts that support this conclusion. Suffice it to say that Miller's history reflects his use of the Internet to victimize minors.

Miller contends that the twenty-five-year duration of the restrictions regarding Internet access is longer than necessary to accomplish the goals of supervised release. The Guideline's policy statement recommends the imposition of the maximum statutory term,[90] which would be a life term in cases such as Miller's.[91] Noting the Guidelines' policy statement, we have previously upheld a lifetime term of supervised release for an individual convicted of possession of child pornography.[92] Similarly, the Ninth Circuit upheld lifetime limitations on computer and Internet use in a child pornography possession case.[93] Here, the district court had strong evidentiary support for its determination that a 25-year prohibition on computer and Internet use unless prior permission from the Probation Office is obtained was reasonably necessary.

---

[90] U.S. SENTENCING GUIDELINES MANUAL § 5D1.2(b) (2009) ("(Policy Statement) If the instant offense of conviction is a sex offense, however, the statutory maximum term of supervised release is recommended.").

[91] 18 U.S.C. § 3583(k).

[92] *United States v. Gonzalez*, 445 F.3d 815, 818-19 (5th Cir. 2006) (citing U.S. SENTENCING GUIDELINES MANUAL § 5D1.2(b) (2009)).

[93] *United States v. Daniels*, 541 F.3d 915, 922-24 (9th Cir. 2008) (citing U.S. SENTENCING GUIDELINES MANUAL. § 5D1.2(b) (2009)).

Citing two cases from other circuits,[94] Miller asserts that there are alternative means of monitoring his Internet use that will adequately deter crime and protect the public. In the first of those cases, *Heckman*, the district court had imposed an unconditional, lifetime ban on Internet access,[95] and the availability of alternative means of monitoring Internet usage was just one consideration that led the Third Circuit to vacate the condition.[96] In the second case cited by Miller, *Johnson*, the Second Circuit affirmed the Internet prohibitions in spite of the suggestion that other means of monitoring Internet use were available.[97]

We are cognizant that recently, in *United States v. Albertson*, the Third Circuit vacated a condition that barred the defendant from online access unless he obtained the prior written approval of the probation officer.[98] That court was of the view that "in a time where the daily necessities of life and work demand not only internet access but internet fluency, sentencing courts need to select the least restrictive alternative for achieving their sentencing purposes."[99] The Third Circuit then reasoned that in light of the defendant's history, sentencing goals could be "achieve[d] . . . through an internet prohibition and monitoring requirement to assure that Albertson does not engage in offensive conduct."[100]

---

[94] *United States v. Heckman*, 592 F.3d 400, 408 (3d Cir. 2010); *United States v. Johnson*, 446 F.3d 272, 282 (2d Cir. 2006).

[95] *Heckman*, 592 F.3d at 402.

[96] *Id.* at 408-09.

[97] *Johnson*, 446 F.3d at 282-83.

[98] 645 F.3d 191, 200 (3d Cir. 2011).

[99] *Id.*

[100] *Id.*

No. 10-50500

With great respect to the rationale of some of the decisions of our sister circuit courts, we reject the argument that a district court may only resort to restrictions on Internet access like those imposed in the present case after investigating the efficacy of other options such as monitoring computer usage and Internet sites visited, unannounced inspections, and filtering devices. Internet access is widely available at locations other than one's home or place of employment.  Internet access is similarly widely available from many types of devices that defendants like Miller might obtain or use without detection.  In addition, there are a variety of devices that are likely to be possessed by friends, family, and acquaintances that might be available to defendants such as Miller for Internet access without detection.

We further note that in the present case, Miller will be incarcerated for a substantial period of time while serving his 25-year prison term.  His supervised release and the restrictions on computer use and Internet access will not commence until after he is released from prison.  Any hearing that the district court may have conducted regarding alternative means of preventing Miller from accessing child pornography, such as filtering or screening software, would have produced information that is likely to be outdated, if not useless, by the time that Miller's supervised release begins.[101]    The district court's restrictions

---

[101] *But cf. United States v. Perazza-Mercado*, 553 F.3d 65, 73-74 (1st Cir. 2009) (concluding that it may be appropriate for a defendant sentenced to 46 months of incarceration, whose sex offense with a child did not involve Internet use to have, "a targeted limitation on internet use" during supervised release and discussing various court decisions and articles that have surveyed the technology available for monitoring computer usage) (citing *United States v. Lifshitz*, 369 F.3d 173, 191-93 (2d Cir. 2004); *United States v. Holm*, 326 F.3d 872, 879 (7th Cir. 2003); *United States v. White*, 244 F.3d 1199, 1206 (10th Cir. 2001); Frank E. Correll Jr., *"You Fall into Scylla in Seeking to Avoid Charybdis": The Second Circuit's Pragmatic Approach to Supervised Release for Sex Offenders*, 49 WM. & MARY L. REV. 681, 682-702 (2007); Dane C. Miller et al., *Conditions of Supervision that Limit an Offenders's Access to Computers and Internet Services: Recent Cases and Emerging Technology*, 42 CRIM. L. BULL., July-Aug. 2006, at 3; Brian K. Payne & Matthew DeMichele, *Warning: Sex Offenders Need to be Supervised in the Community*, 72 FED. PROBATION, June 2008, at 37; Stephen Brake & Jim Tanner, *Determining The Need for Internet Monitoring of Sex Offenders*,

31

No. 10-50500

instead permit flexibility by allowing the probation officer to consider all the circumstances, including Miller's needs for computer and Internet access and alternatives that may exist in the future for supervising that access. This is a reasonable means of balancing Miller's rights and the goal of protecting minors, as other courts have recognized.[102] We, like the District of Columbia Circuit, "assume the Probation Office will reasonably exercise its discretion by permitting [the defendant] to use the Internet when, and to the extent, the prohibition no longer serves the purposes of his supervised release."[103]

## IV

Miller challenges the condition that he can "not own or possess any type of camera, photographic device, and or other electronic equipment (including video recording equipment), without approval of the probation officer." Miller objected in the district court on the ground that this condition failed to relate to

---

http://www.kbsolutions.com/MonitoringNeed.pdf (last visited Nov. 25, 2008); Jim Tanner, *Rethinking Computer Management of Sex Offenders Under Community Supervision*, http://www.kbsolutions.com/rcm.pdf (2007)).

[102] *See United States v. Love*, 593 F.3d 1, 12 (D.C. Cir. 2010) (upholding a similar restriction while noting that the "term of supervised release will not begin any time soon," that there may be changes in technology, and therefore that "[a] broad Internet prohibition, which the Probation Office will tailor to the technology in use at the time of [the defendant's] release, is an appropriate way to deal with that uncertainty."); *see also United States v. Russell*, 600 F.3d 631, 638 (D.C. Cir. 2010) (concluding that "[a] provision for modification by the probation department—a minimum change suitable on remand—would allow the restriction to adjust to ongoing developments in technology and to secure a reasonable balance between the statute's rehabilitative and deterrence goals."). *But see United States v. Mark*, 425 F.3d 505, 510 (8th Cir. 2005) (holding that restrictions on computer and Internet access to commence after a sentence of 30 months of imprisonment for "simple" possession of child pornography was not supported by the record because the district court did not explore alternatives such as a filtering program, or restrictions on the time and place of Internet access combined with regular monitoring and inspections by the probation office).

[103] *United States v. Love*, 593 F.3d 1, 12 (D.C. Cir. 2010).

the statutory criteria for supervised release conditions, and therefore we consider that challenge for an abuse of discretion.[104]

Miller asserts that his offense did not involve a camera or any other photographic device and therefore the condition is not reasonably related to "the nature and characteristics of the offense and the history and characteristics of the defendant."[105]  Although Miller did not use a camera in committing his offense, the record reflects that he engaged in highly inappropriate, if not criminal, activities that involved the use of photographic equipment.  Miller admitted to using a web camera to communicate with a juvenile female on two occasions.  His cell phone had images of child pornography, including depictions of bondage.  Miller's history fully supported the condition he now assails.

On appeal, Miller argues for the first time that the ban on "other electronic equipment" could have a variety of additional applications beyond recording devices: for instance, "a television, radio, DVD player, or even an MP3 player." In objecting in the district court, Miller did not reference the potential for this phrase to have a meaning uncabined by the other items listed with it.  As a result, the district court had no opportunity to discern Miller's concern and obviate the need for our review by clarifying its language.  We review Miller's unpreserved contention for plain error.[106]

No such error occurred.  This court has stated that "'conditions of probation can be written—and must be read—in a commonsense way' because

---

[104] *United States v. Paul*, 274 F.3d 155, 165 (5th Cir. 2001).

[105] 18 U.S.C. § 3553(a)(1).

[106] *United States v. Gutierrez*, 635 F.3d 148, 152 (5th Cir. 2011); *see also United States v. Burns*, 526 F.3d 852, 858 (5th Cir. 2008) (quoting *United States v. Jimenez*, 256 F.3d 330, 340 (5th Cir. 2001)) ("Plain error exists if (1) there was error; (2) the error was clear and obvious; and (3) the error affected a substantial right.  Plain error review is limited to those errors that 'seriously affect the fairness, integrity or public reputation of judicial proceedings.'").

No. 10-50500

'it would be impossible to list' every instance of prohibited conduct."[107] Here, the list of prohibited items refers exclusively to recording devices. A commonsense reading of the phrase "other electronic equipment," immediately after the naming of two recording devices, and immediately followed by a parenthetical naming a specific type of recording device, limits the phrase to other electronic recording devices. It would also be nonsensical to include computer use in another release condition if "electronic equipment" had the broad meaning now imputed to it by Miller. The term clarifies that Miller cannot use a future recording device not presently in existence. Our construction of the term is also consistent with the canon of *ejusdem generis*, which provides that "'where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated.'"[108]

## V

The district court imposed a condition pertaining to sexually stimulating or sexually oriented materials:

> The defendant shall refrain from purchasing, possessing, or using any sexually stimulating or sexually oriented materials including but not limited to written, audio and visual depictions, such as, pornographic books, magazines, photographs, films, videos, DVDs, computer programs, or any other media for portrayal of the same.

Miller challenges this condition on three grounds, arguing that it: (1) impinges on his First Amendment rights because it forbids him from possessing legal adult pornography, (2) impinges on his First Amendment rights because it

---

[107] *United States v. Phipps*, 319 F.3d 177, 193 (5th Cir. 2003) (quoting *Paul*, 274 F.3d at 166).

[108] *First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In re Biloxi Casino Belle Inc.)*, 368 F.3d 491, 499 n.8 (5th Cir. 2004) (quoting *Rhoden v. State Farm Fire & Cas. Co.*, 32 F. Supp. 2d 907, 912 (S.D. Miss. 1998)).

34

forbids him from possessing legal sexually oriented material that is not pornographic, such as PLAYBOY magazine, and (3) violates his right to due process because it fails to give sufficient notice of what he is banned from possessing.

Miller's only objection to this condition in the district court was

> viewing pornography . . . [since] all such conditions on supervision must reasonably relate to certain statutory criteria set out in 3553(a) or 3583, and they also must be designed to be not any greater—to impose no greater deprivation of liberty than is reasonably necessary. Some of those conditions, such as viewing pornography generally . . . may be overbroad.

Miller's objection that the condition "may be overbroad" was insufficient to preserve the specific challenges that he now asserts on appeal. Miller did not "raise a claim of error with the district court in such a manner so that the district court may [have] correct[ed] itself and thus, obviate[d] the need for our review."[109] We therefore review for plain error.[110]

Miller acknowledges that restrictions on access to sexually oriented materials is permissible if those restrictions have a clear nexus to the goals of supervised release, citing a decision of the Third Circuit.[111] He argues that there is no indication in the record that sexually explicit material involving only adults contributed in any way to his offense of transporting child pornography. In a related vein, he asserts that there is no reason to believe that viewing adult pornography would cause him to reoffend. Because Miller's challenge is based on factual matters, we accept the legal framework that he posits, without endorsing or adopting that framework. We conclude that the district court did

---

[109] *Gutierrez*, 635 F.3d at 152 (quoting *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009)).

[110] *Id.*

[111] *United States v. Thielemann*, 575 F.3d 265, 272 (3d Cir. 2009).

No. 10-50500

not clearly err in finding a nexus between Miller's history and the prohibitions regarding adult pornography and other legal, sexually stimulating material.

Among the items listed in the indictment count to which Miller pled guilty was a "video file depicting a nude minor female being anally raped by a nude adult male while a nude adult female holds the minor female in place." The presence of both nude adults in Miller's video permits the conclusion that Miller's interest in "sexually stimulating" materials involving adults is intertwined with his sexual interest in minors and thus, his offense.

The presentence investigation report documented the ways in which Miller's consumption of adult pornography impinged on his daily life. For instance, the Navy's investigation of Miller began because of the adult and child pornography he had downloaded to his work computer. He also often used paid phone sex companies, in some cases charging in excess of $100 to his grandfather's credit card. This evidence supports the district court's explicit concerns regarding Miller's "obsession for making phone sex calls and viewing pornography." Even were we to review for an abuse of discretion Miller's contention that this release condition does not reasonably relate to any of the § 3583 and § 3553 factors, the district court would not have abused its discretion in imposing this condition in light of the foregoing.[112]

Miller's second contention on appeal is that the prohibition regarding sexually oriented or sexually stimulating material could include magazines such as PLAYBOY, or "an art gallery exhibit of erotica." We do not address whether the imposition of this condition constituted error because "[a]n error is considered

---

[112] *See United States v. Paul*, 274 F.3d 155, 165 (5th Cir. 2001); *see also United States v. Boston*, 494 F.3d 660, 668 (8th Cir. 2007) (holding that "the condition in prohibiting his access to sexually explicit material involving adults is not overly broad" for defendant convicted of producing child pornography in light of his "history of sexual offenses").

36

plain, or obvious, only if the error is clear under existing law."[113] Miller has cited no controlling authority on this question of First Amendment overbreadth. Our sister circuits have upheld, under varying standards of review, conditions of supervised release barring individuals convicted of child pornography offenses from possessing sexually explicit materials in the face of First Amendment overbreadth challenges.[114] Because our law is unsettled, and the law of our sister circuits is not uniformly in the defendant's favor, plain error is not demonstrated.[115]

Miller's third challenge to this condition of supervised release is that the condition is vague: "it fails to give Miller sufficient notice of what he is banned from possessing while on supervised release." He offers as examples of ambiguity whether he could be convicted for viewing Michelangelo's *David*, reading the novel *Lolita* or viewing its film adaptation, and again points to PLAYBOY magazine.

Under plain error review, we have previously held a supervised release condition precluding the possession of "sexually oriented or sexually stimulating materials" was not impermissibly vague.[116] We stated that "a commonsense reading of the special condition" "compels us to disagree with defendants' suggestion that the condition could apply to newspapers and magazines that contain lingerie advertisements or even to the 'Song of Solomon.'"[117] That commonsense reading would be required even if we reviewed a preserved

---

[113] *United States v. Salinas*, 480 F.3d 750, 756 (5th Cir. 2007) (citing *United States v. Olano*, 507 U.S. 725, 734 (1993)).

[114] *See, e.g.*, *United States v. Daniels*, 541 F.3d 915, 927-28 (9th Cir. 2008) (reviewing for plain error); *Boston*, 494 F.3d at 667-68 (reviewing for abuse of discretion).

[115] *See Salinas*, 480 F.3d at 759.

[116] *United States v. Phipps*, 319 F.3d 177, 193 (5th Cir. 2003).

[117] *Id.*

objection.  As we noted in *United States v. Paul*, reviewing for abuse of discretion, "categorical terms can provide adequate notice of prohibited conduct when there is a commonsense understanding of what activities the categories encompass."[118]  Indeed, "while a probationer 'is entitled to notice of what behavior will result in a violation, so that he may guide his actions accordingly . . . [c]onditions of probation 'may afford fair warning even if they are not precise to the point of pedantry.'"[119]

Even were there no precedent in this circuit to guide us, we cannot say that the law in this area is clear when we consider decisions of other circuit courts.[120]  The district court did not plainly err in imposing the challenged condition.

**\* \* \***

We AFFIRM.

---

[118] 274 F.3d at 167.

[119] *Id.* at 166-67 (quoting *United States v. Gallo*, 20 F.3d 7, 12 (1st Cir. 1993)).

[120] *Compare United States v. Stults*, 575 F.3d 834, 854-55 (8th Cir. 2009) (conducting plain error review and concluding that law was unsettled as to whether the term "pornography" as used in a condition of supervised release was too vague), *United States v. Rearden*, 349 F.3d 608, 619-20 (9th Cir. 2003) (holding that condition prohibiting possession of "sexually explicit conduct" as defined in 28 U.S.C. § 2256(2) "is neither vague or overly broad"), *and United States v. Simmons*, 343 F.3d 72, 80-83 (2d Cir. 2003) (holding that condition prohibiting possession of "pornographic material" gave adequate guidance of what was prohibited in light of the definitions in 28 U.S.C. § 2256 of pornography and sexually explicit conduct), *with United States v. Voelker*, 489 F.3d 139, 152 (3d Cir. 2007) (recounting that a prior decision vacated a ban encompassing legal and illegal pornography because it was found to violate "due process rights by 'failing to provide [the defendant] with adequate notice of what he may or may not do, chilling First Amendment rights in the process'") (quoting *United States v. Loy*, 237 F.3d 251, 267 (3d Cir. 2001)), and *United States v. Antelope*, 395 F.3d 1128, 1141-42 (9th Cir. 2005) (holding that "any pornographic, sexually oriented or sexually stimulating materials" was impermissibly vague).